City of Bristol v. Bostwicl

CITY OF BRISTOL *et al. v.* WILLIAM H. BOSTWICK *et al.*

(*Knoxville.* September Term, 1921.)

1. **APPEAL AND ERROR.** Opinion on former appeal law of case on subsequent appeal.

The decision of the supreme court on a former appeal *held* the law of the case on a subsequent appeal. (*Post, p.* 210.)

2. **MUNICIPAL CORPORATIONS.** Insolvency of contractor and apparent inability to complete contract held to warrant city in assuming charge of work.

Where a contract called for completion of a main building in October and an auditorium in January, but the contractor had finished neither building in February, and was insolvent, and it was apparent that he was wholly unable to complete the contract, the city was warranted in giving the contractor the required notice and assuming charge of the work. (*Post, pp.* 210, 211.)

3. **DAMAGES.** Provision in contract for construction of school for. payment for delay held a provision for liquidated damages, and not a penalty.

Provision in contract for construction of school buildings stipulating for an agreed *per diem* payment for delay *held* one for liquidated damages, and not a penalty in view of nature of the contract, the purpose for which the building was to be used, the public detriment to be contemplated by delay, and the difficulty of estimating the damage. (*Post, pp.* 210, 211.)

Cases cited and approved: Vaulx v. Buntin, 127 Tenn., 118; Wise v. United States, 249 U. S., 361.

4. **MUNICIPAL CORPORATIONS.** Claim of laborers and materialmen against public contractor must be filed within 30 days after contractor's abandonment of the contract.

Under Acts 1899, chapter 182, section 4, requiring notice of claims of laborers and materialmen against public contractor to be filed

"within thirty days after the contract is completed," laborers and materialmen, to bring themselves within the protection of the bond of the contractor who has abandoned the contract, must file claim within thirty days after abandonment of the contract. (*Post, pp.* 211-214.)

5.  MUNICIPAL CORPORATIONS.  Abandonment or default of contractor to constitute completion of contract within statutes as to filing of claims must be such as to be legally binding.

The abandonment or default of a public contractor, to constitute the expiration or completion of his contract, within Acts 1899, chapter 182, section 4, requiring laborers and materialmen to file claims within thirty days after completion of the contract to come within the protection of the contractor's bond, must be such as to be legally binding upon him; temporary cessation of or interference with the work not acquiesced in by the contractor not being sufficient. (*Post, pp.* 211-214.)

6.  MUNICIPAL CORPORATIONS.  Temporary cessation or interference with work, not acquiesced in by public contractor, will not work forfeiture of the contract.

Temporary cessation of work or interference therewith, not acquiesced in by contractor, will not work a forfeiture by the contractor of the public contract, since only the existence of legal causes will terminate his rights thereunder. (*Post, pp.* 211-214.)

7.  MUNICIPAL CORPORATIONS.  Contractor and surety claiming that contract was not abandoned could not insist that particular time should be taken as fixing completion under statute as to filing claims.

Public contractor and his surety, claiming that the contractor had not abandoned his contract, but was legally deprived thereof by the city, could not insist that any particular time was taken as fixing the completion of the contract within Acts 1899 chapter 182, section 4, requiring laborers and materialmen to file claims within thirty days after completion of the contract to come within the protection of the contractor's bond. (*Post, pp.* 211-214.)

City of Bristol v. Bostwick.

8. **MUNICIPAL CORPORATIONS.** Materialmen and laborers to avail themselves of public contractor's bond need not have given surety notice of claims.

Materialmen and laborers to avail themselves of public contractor's bond executed under Acts 1899, chapter 182, need not have given contractor's surety notice of their claims. (*Post, pp.* 214, 215.)

9. **MUNICIPAL CORPORATIONS.** Contractor's bond executed under statute not construed to impose requirements in addition to those designated ino statute.

Public contractor's bond executed under Acts 1899, chapter 182, will not be construed to impose requirements in addition to those designated in the statute. (*Post, pp.* 214, 215.)

10. **MUNICIPAL CORPORATIONS.** Public contractor's surety held not relieved from liability for payments made by contractor to assignee.

Where public contract provided for payments to contractor on estimates for labor and material actually employed in the construction of the building, and did not restrict contractor's right to make assignment thereof, contractor's surety was not relieved from liability because of payments so made to contractor or his assignee, where amount in excess of payments so made was actually used in furtherance of the work. (*Post, pp.* 214, 215.)

Acts cited and construed: Acts 1915, ch. 192.

11. **MUNICIPAL CORPORATIONS.** Provision in public contractor's bond requiring notice to surety of default, accompanied by statement of principal facts showing claim for indemnity, held valid.

Stipulation in contractor's bond providing for notice of default, accompanied by a statement of the principal facts showing the claim for indemnity, *held* valid. (*Post, pp.* 215, 216.)

12. **MUNICIPAL CORPORATIONS.** City completing building on contractor's abandonment entitled to apply funds of contractor in its hands in satisfaction of its damages awarded for delay.

Where a city completed contract on contractor's abandonment thereof, the city was authorized to apply the funds of the contractor in its hands to the satisfaction of its damages awarded for delay incompletion of the building. (*Post, p.* 216.)

City of Bristol v. Bostwick.

13. **MUNICIPAL CORPORATIONS.** Surety not subject to additional liability under statute for refusal to make settlements after demand unless refusal in bad faith.

Under Acts 1901, chapter 141, providing, for additional liability in cases where the refusal of the insurer or indemnitor to make settlement after demand is not made in good faith, it must appear that the surety company was prompted by improper motives in its refusal to settle upon the bond, or that its defense of the suit instituted by the city was not in good faith to entitle the city to additional liability. (*Post, p.* 216.)

Case cited and approved: Silliman v. Life Ins. Co., 135 Tenn., 646.

14. **MUNICIPAL CORPORATIONS.** Claimants benefiting by city's successful prosecution of suit on public contractor's bond required to bear proportionate part of counsel fees.

In action on public contractor's bond executed under Acts, 1899, chapter 182, and Private Acts 1915, chapter 192, in which the success of the city in enforcing the obligations of the bond inured to the benefit of claimants for material and labor, the claimants will be required to bear their proportionate share of the counsel fees incurred by the city in prosecuting a suit. (*Post, p.* 217.)

---

FROM SULLIVAN.

---

Appeal from the Chancery Court of Sullivan County.— HON. HAL H. HAYNES, Chancellor.

ST. JOHN & GORE, for appellants.

FRANK PARK, JR., and J. H. BUNDREN, for appellees.

MR. JUSTICE BACHMAN delivered the opinion of the Court.

City of Bristol v. Bostwick.

This cause was before the court upon the bill, demurrer thereto, and cross-bills of creditors at the September term at Knoxville, 1917, and the action of the court thereon is reported in 139 Tenn., 304 et seq., 202 S. W., 61. Upon remand extensive proof was taken, upon which an advisory reference to a special master was ordered by the chancellor. The master reported that the contractor, Bostwick, was in default at the time the building commission took over the contract, and that he was entitled to no recovery thereon save for extra work in the sum of $160.90. It was further reported that Bostwick was liable to complainants under contractual provision for delay $4,125, as liquidated damages, leaving a balance of $1,959.35 due the city, it having in its possession $2,165.65 belonging to Bostwick. The identity of creditors was fixed, and the aggregate of their claims was found to be $21,271.87, for which the surety was held proportionately liable to the extent of $20,000, the amount of its bond. The master found that the surety was not released from its undertaking because of the payment of certain estimates, after notice, to the contractor and his assignees, but that it was liable for the claims of the creditors for labor and material, as well as for the costs and expenses of the suit, together with attorneys' fees, fixed at $2,500. By the report the surety was held not liable for the city's claim for liquidated damages on account of delay, no notice thereof having been given it, as provided under the indemnity phase of its bond.

Exceptions to the report were taken by both parties, all of which were overruled, with the exception of the reduction of the city's claim for liquidated damages to the sum of $2,000; the report was in all things confirmed by the chancellor, and a decree in conformity thereto was entered.

146 Tenn.—14

The case is before us upon appeals by both parties, and numerous errors are assigned, in support of which counsel present exhaustive briefs.

In the case of the *Kingsport Improvement Corporation* v. *W. H. Bostwick and United States Fidelity & Guaranty Co. et al.,* a number of the questions here made have been adjudicated, and any discussion other than their enumeration is deemed unnecessary. The refusal of the chancellor to stay proceedings on account of military service of the defendant Bostwick, the payment of earned estimates to Bostwick, and his assignees, as well as the authority of the chancellor to order an advisory reference, upon questions of law and fact, and the authority to fix compensation for the special master, were passed upon, and need not here be further considered. Also the decision of this court upon the former appeal in this case is the law applicable, and is conclusive of certain other questions here made. That the defendant Bostwick was in default upon his contract and the city warranted in giving notice and subsequently assuming charge of the work is clearly shown in the proof. The dual obligation of the surety has been heretofore determined, and the record does not disclose any proof warranting the conclusion that, in the execution of the bond, the surety was in any wise deceived or misled; certainly to one engaged in the business of professional suretyship the insistence of the building commission that the bond be made to comply with the statutory requirements and the citation of authority for the necessity therefor was an unambiguous request, the effect of compliance with which could not have been misunderstood.

The allegations of the bill as to the delay and default of the contractor in the performance of his contract are fully

City of Bristol v. Bostwick.

sustained by the proof, and the city was warranted in giving the required notice and assuming charge of the work. The contract entered into April 14, 1916, called for the completion of the main school building in October following, and the auditorium in January. In February thereafter neither of the buildings were finished, the contractor was insolvent, and it was apparent that he was wholly unable to complete his undertaking. While it may be admitted that conditions with reference to labor and construction material prevailing during the period within which the work was to be done were such as to impede the progress of the work, yet the delay, as shown by the record, is not attributable to causes exculpating the contractor, but rather to his personal inability to further the construction, as agreed upon. The contractor contends that he should not be held liable in any amount upon the provision in the contract stipulating an agreed *per diem* payment for delay, for the reason that the same is to be considered a penalty, and solely for the purpose of enforcing the completion of the contract, and for the further reason that the delay was the result of conditions over which he had no control. Considering the nature of the contract, the purpose for which the building was to be used, the public detriment to be contemplated by delay, with the difficulty of approximating the damage thereon, we think the stipulation complained of is a reasonable pre-ascertainment by the parties of the liquidated damages and is not to be regarded as a penalty. *Vaulx* v. *Buntin,* 127 Tenn., 118, 153 S. W., 481; *Wise* v. *United States,* 249 U. S., 361, 39 Sup. Ct., 303, 63 L. Ed., 647.

It was the opinion of the learned chancellor that notice given within thirty days after abandonment by the prin-

cipal contractor, or within thirty days after the completion of the contract by the city, or at any time after the debts became due, and within thirty days after the completion of the work to be done under the contract, was a sufficient compliance with the provision of the statute. With due respect to the holding of the chancellor, for whose opinion we entertain the highest regard, it is manifest that he misconstrued the holding of this court on the former appeal as to when effective notice must be given by claimants to secure the benefits of chapter 182 of the Acts of 1899, in cases of default, as here shown. The court there held that, to avail laborers or furnishers of material, notice of claims must be given within thirty days after the time the contract was abandoned by the original contractor. By the terms of the statute (section 4) the completion of the contract is the beginning of the period in which liability may be fixed by notice, and the contract contemplated is necessarily that of the principal, whose faithful performance of his obligation is under-written, and with whom dealings have been had, and by whom the debts of claimants are owed. The language of the section referred to is plain, unambiguous, and, in our opinion, alone susceptible to the construction heretofore placed thereon; the definition of the word "within" is properly found by the chancellor as denoting "before the expiration of," "in advance of," "before," "not beyond or more than;" but it is to be noted that the period of action is prospective and limited to a time subsequent by the immediate use of the word "after." The performance of an act "within thirty days after" a given event must take place before the limitation of the time succeeding the event. The pronouncement on the former appeal is the law of the case, and must determine

the validity of the claims presented.  It was insisted before the chancellor, and again here, that in the former opinion the court determined a fixed date as the time of abandonment or completion of the principal's contract, namely, the date of the receivership proceedings against the contractor, and that the filing of claims was limited to thirty days from such time.  This is an erroneous conception of what was said upon this question.  The former hearing was upon the bill and demurrer, and it was alleged that receivers had been appointed for the contractor, and the work had thereupon been abandoned by him.  Accepting the allegations as true, the date of receivership and abandonment would mark the completion of the principal's contract and the beginning of the thirty days given by the statute.  However the proof shows that receivership for the defendant Bostwick was never effectuated, nor was there any abandonment by him until the city took over the work pursuant to notice provided for under the terms of the contract.  The abandonment or default of the contractor to constitute the expiration or completion of his contract must be such as to be legally binding upon him; temporary cessation of or interference with the work, not acquiesced in by the contractor, will not work a forfeiture, for only the existence of legal causes will terminate his rights under the contract.  The defendant and his surety cannot here insist that any particular time is to be taken as fixing the completion of the contract, for the reason that it is their contention that the defendant Bostwick has never relinquished nor abandoned his contract, but that he was illegally deprived thereof by the city.  We therefore hold that the legal termination of the contract occurred on March 26, 1917, when the work was taken over

by the city, and that only such claims as were properly filed within thirty days after such date come within the executed bond.

The bond has been determined one in compliance with the provisions of both the Act of 1915 (Priv. Acts 1915, chapter 192), under the authority of which the contract was entered into, and the Act of 1899, for the protection of laborers and furnishers of material. The provision for notice by the terms of the instrument is applicable to the same in its character first mentioned. The Acts 1899, chapter 182, section 1, specifies that the contractor "shall first execute a good and solvent bond to the effect that he will pay for all the materials and labor used in said contract, in lawful money of the United States." Notice of claims to the contractor's surety is neither required nor provided for in the act, and by no construction will the bond be held to impose requirements in addition to those designated in the statute, the effect of which in the case here would be to destroy the very protection which the act was intended to afford. The insistence of the defendant surety that it is released from all liability on its bond because of unauthorized payments to the contractor or his assignees cannot be maintained. There is ample evidence in the record sustaining the finding of the master and the chancellor on this question. Under article 8 of the contract payment on earned estimates were to be made to the contractor; his right of assignment was in no wise restricted by the terms of the bond or the contract, and it is shown that all payments made were upon estimates for labor and material actually employed in the construction of the building—in fact, it is shown by the testimony of the contractor—that all moneys paid him on the contract

were used in furtherance of the work, and that in addition he expended several thousand dollars thereon. Upon such showing the surety is in no position to raise the question of a diversion of the funds paid or that its rights were at all prejudiced.

Error is assigned by the city to the action of the chancellor reducing the amount of its claim for damages on account of delay from $4,125, as found by the master, to the sum of $2,000. While it is true that interest upon the amount invested by the city, as held by the chancellor, may not be the measure of damage, being but an element to be considered, yet the amount fixed is, in our opinion, an equitable adjustment between the parties, and will therefore not be disturbed. Computing the time for which the stated amount should be allowed upon the number of working school days of which the city was deprived, exclusive of holidays, and the extension granted on account of unavoidable delays, together with the period in which the receivership proceedings were pending and that of notice given by the city of its intention to take over the work, the amount fixed by the chancellor is a reasonable approximation of the amount the city is entitled to recover.

It is contended that the chancellor erred in not sustaining the award to the city for delay as a liability for which the surety should be held upon its bond. The stipulation for notice, accompanied by a statement of the principal facts showing the claim for indemnity, is a reasonable one, with reference to which the parties were at full liberty to contract, and is binding upon the city in its demand against the surety. There is no proof in the record showing compliance with this provision, and it cannot be held that the institution of suit was effectual for this purpose for

the reason that it clearly appears that the city was well aware of the contractor's default for several months before recovery was sought therefor.

It is contended by the surety that the decree is erroneous in so far as it authorizes the city to apply the funds of the contractor in its hands to the satisfaction of its damages awarded for delay. We are unable to see upon what principle this insistence can be sustained. That the surety is entitled to be subrogated to any rights available to its principal is not to be questioned, and, were the funds in the possession of the city without claim of right or the principal entitled thereto, there could be no doubt of the surety's right to obtain and apply the same in diminution of its losses on the bond; but it must be manifest that any right or equity of the surety must arise through, and is only coextensive with, that of the principal; here the city completed the work and is found entitled to damages on account of the default of the contractor; the latter is entitled to funds retained by the city only to the extent that the same exceed the amount of the city's award; the rights of the surety are no greater.

We do not find the case here presented one for the application of chapter 141 of the Acts of 1901, providing for additional liability in cases where the refusal of the insurer or indemnitor to make settlement after demand is not made in good faith; the proof does not warrant the finding that the surety company was prompted by improper motives in its refusal to settle upon the bond, or that its defense of the suit instituted by the city was not in good faith. This must appear before the discretion of the court can be invoked. *Silliman* v. *Iife Ins Co.*, 135 Tenn., 646, 188 S. W., 273.

City of Bristol v. Bostwick.

A fee of $3,000 will be allowed the solicitors for the complainants for their services in this and the chancery court, one-half of the amount to be paid by the defendants and one-half out of the amount realized by the successful claimants. The language of the bond assuring the city indemnity is plain, broad, and unambiguous; it is an undertaking by the surety, for compensation, to hold the city harmless against claims of every description incurred in suits or otherwise growing out of the prosecution of the work. That the city rightfully brought suit to enforce the obligations of the defendants has been determined, and it is clear that the bond is sufficiently comprehensive to include the fees of counsel incurred by the city in good faith and made necessary by reason of the default of the contractor for whose faithful performance the surety stood bound. The efforts of counsel in sustaining liability upon the bond has inured to the benefit of the successful claimants, and it is just that they should bear their proportionate part of counsel fees, as heretofore indicated. The defendants will pay the costs of the appeal, with the exception of the costs incident to the cross-bill of the Citizens' Savings Bank & Trust Company, which are chargeable to it; the costs of the chancery court will remain as decreed.

For the purpose of ascertaining enforceable claims in accordance with our findings herein, the case is remanded, and a reference therefor may be had in the discretion of the chancellor. Save as modified, the decree is affirmed.