UNITED STATES of America for the Use and Benefit of SHANKLE–CLAIRDAY, INC. and Norvell & Wallace, Inc.

v.

J. Harvey CROW and United States Fidelity & Guaranty Company.

No. 75–68–NA–CV.

United States District Court, M. D. Tennessee, Nashville Division.

Jan. 9, 1976.

H. Frederick Humbracht, Jr., Dearborn & Ewing, Nashville, Tenn., for plaintiff.

J. Harvey Crow, pro se.

Ed R. Davies, Smith, Davies, Smith & Crantrell, Nashville, Tenn., for U. S. Fidelity & Guaranty Co.

## MEMORANDUM

MORTON, District Judge.

Plaintiff Shankle-Clairday, Inc. brings suit pursuant to the provisions of the Miller Act, 40 U.S.C. § 270a *et seq.* to recover for material furnished to defendant J. Harvey Crow, a contractor. United States Fidelity & Guaranty Company is sued as surety for defendant Crow. Crow seeks recovery from plaintiff of damages allegedly resulting from the latter's failure to timely perform its contract. This surety seeks judgment against Crow for any amounts it is required to pay by virtue of its bond.

On October 2, 1973, J. Harvey Crow contracted with the United States of America to make certain improvements on the seventh floor of the Federal Building in Nashville, Tennessee. Notice for J. Harvey Crow to proceed upon the performance of this contract was issued by the General Services Administration on October 12, 1973. The completion of the contract was required by January 15, 1974. The contract contained a provision requiring the contractor to pay liquidated damages to the United States of America in the amount of $15.00 per day for each day completion of the contract exceeded January 15, 1974.

On October 8, 1973, United States Fidelity and Guaranty Company as surety executed a payment bond for J. Harvey Crow as principal whereby it agreed to be answerable for payment to all persons supplying labor and material in the prosecution of the work.

A portion of the contract provided for the installation of acoustical ceiling tile on the seventh floor of the Federal Building in Nashville, Tennessee.

Prior to November 29, 1973, J. Harvey Crow contacted Mr. Bruce Shankle, an officer of Shankle-Clairday, Inc. by telephone from his office in Brecksville, Ohio to inquire as to the availability of and to receive a price quotation for the acoustical ceiling tile specified in the government contract. During this telephone conversation, Bruce Shankle was informed that the contract was with the United States Government and included a provision requiring payment by the contractor of liquidated damages in the amount of $15.00 per day for each day completion of the contract exceeded the completion date. Shankle advised that acoustical ceiling tile was available, and could be supplied by Shankle-Clairday, Inc. between December 1, 1973, and December 15, 1973, at a cost of $469.44. Thereupon, J. Harvey Crow orally placed an order for acoustical ceiling tile with Shankle-Clairday, Inc. and confirmed the purchase by written purchase order No. 666 dated November 29, 1973.

The tile was not delivered at the agreed time. Several conversations ensued between Shankle and Crow. Various delivery dates were projected by Shankle with the delivery being made on February 20, 1974. At no time did Crow terminate his contract with the plaintiff. Neither did he attempt to obtain the tile from other suppliers who had the product available.

As a direct result of the plaintiff's failure to deliver on the date specified in the contract, the defendant completed performance on March 15, 1974, and was assessed liquidated damages in the amount of $885.00. The plaintiff, through its officer Shankle, knew of the contract penalty provision and was generally familiar with such provisions in government contracts.

By reason of the return of a portion of the tile, Crow is entitled to a credit of $24.00 on the sales price. Thus, the amount to be recovered by plaintiff, if successful, is the contract price ($469.44), less his credit, or $445.44. The court rejects the testimony of the witness Shankle as to the sales price of the tile.

Defendant Crow refused to pay the purchase price of the tile and asserted a set off claim against plaintiff for $885.00, Crow's liquidated damages under the government contract. The defendant surety, on receiving notice of the dispute and the claim against it as surety, demanded that Crow furnish it a defense. Crow refused to do so. Thereafter, the surety company employed an attorney who defended it against liability, filed an answer, a cross-claim against Crow, and participated in the trial of the cause. When the complaint was originally filed, another claimant, Norvell & Wallace, Inc. was seeking a judgment. Crow paid this claim immediately prior to the trial date.

As before stated, on March 17, 1975, United States Fidelity & Guaranty Company employed Ed R. Davies, an attorney of Nashville, Tennessee, to protect its interest in this cause. Davies will charge United States Fidelity & Guaranty Company a total of $970.00 for professional services rendered in this litigation, which amount the latter asserts is recoverable from the defendant Crow because of his refusal to provide the surety a defense.

The Miller Act is silent on the question of whether attorney's fees are recoverable in actions brought under it. At least with respect to the rights of a successful plaintiff suing the principal and his surety under the Act, the Supreme Court has made it clear that the recovery of attorney's fees is to be determined not by state law, as the defendant surety suggests, but by federal law, and that in federal courts the so-called "American Rule" governs. *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). The

"American Rule" provides that attorney's fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Id.* at 126, 94 S.Ct. at 2163, 40 L.Ed.2d at 712. The absence of any such statutory or contractual provisions in the instant case is manifest and will be discussed in detail below. Thus, under the rationale of *Rich,* the surety's claim for attorney's fees from its principal might similarly be rejected. But since the issue in *Rich* was whether a *successful plaintiff* could recover attorney's fees from the defendants, the question of whether an *unsuccessful surety* is similarly limited, is arguably outside the scope of that decision. Even if the defendant surety's rights in the instant case were to be determined according to state law (in this case, Tennessee law), however, the discussion below will demonstrate that the surety would be in no better position.

While there appear to be no Tennessee cases squarely on point, the relevant case law strongly suggests that a compensated surety (as opposed to an accommodation surety), in the absence of an indemnity agreement or a controlling statute, may not recover from its principal expenses which it incurs in defending a suit brought by an obligee against the principal and surety as codefendants, unless it has first satisfied some portion of the principal's obligation.

This principle is not a novel one. In the 1869 case of *Overton v. Hardin,* 46 Tenn. (6 Coldwell) 375 (1869), the Tennessee Supreme Court ruled that an indorser (alternately referred to by the court as a surety) on a note "has no remedy against the maker, [i. e., principal] for costs incurred by him in his own defense." The court distinguished such an "indorser for value" from an "accommodation indorser," declaring that the latter "may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: 1 Parsons on Con., 33; Sedgwick on Dam., 297, 335."

The distinction drawn in *Overton* between accommodation indorsers and indorsers for value is significant, for implicit in it is the idea that one who receives compensation for guaranteeing the performance of another must concomitantly accept certain risks attendant thereto, one of which is that he may be called upon to defend himself against claims deriving from his undertaking.

This risk has been tacitly acknowledged by the bonding industry for many years, for in virtually every bond application prepared by professional sureties there appears an indemnity agreement specifically shifting the burden to the principal to bear all expenses incident to a claim on the bond.[1]

In the instant case, however, the defendant surety admits that there was no bond application made by the defendant Crow. Hence, there was no express contractual indemnity agreement obligating Crow to hold harmless his surety in case of a third party claim. The surety seems to argue, however, that there is an indemnity obligation *implied in law,* requiring that the principal provide a defense for the surety when both are sued, but before any payment on the bond is made by the surety. In support of this argument, the defendant surety cites *Holt v. Winstead,* 45 Tenn. (5 Coldwell) 568 (1868), and *Bristol v. Bostwick,* 146 Tenn. 205, 240 S.W. 774 (1922).

Neither of the above cases can be read to support the defendant surety's position. In *Holt,* the Tennessee Supreme Court merely declared that pursuant to the statute in force at that time, a surety who defended an action against it, if such defense was

---

1. See, e. g., *Gibson County Bank v. Shatz,* 12 Tenn.App. 281 (1930); *Central Towers Apartments, Inc. v. Martin,* 61 Tenn.App. 244, 453 S.W.2d 789 (1969); Transamerica Ins. Co. v. Bloomfield, 401 F.2d 357 (6th Cir. 1968).

It might be noted parenthetically that in some thirty-five years of private practice, during which the court was involved in numerous suretyship arrangements, it cannot recall a single instance where, as in the instant case, an indemnity agreement was not exacted from the principal by the surety as a part of the bonding contract, obligating the former to bear all expenses of litigation, including attorney's fees.

reasonable and bona fide, could recover his "costs" from his principal.[2]

The statute upon which the court based its holding was the precursor of the present Tennessee Code Annotated sections 25–323 and 25–335, which are in all pertinent respects identical to the Code provision cited in *Holt.* Both the original and modern code sections provide in essence that a surety may recover on judgment by motion against his principal "interest and costs of the original judgment." No specific mention is made of "attorney's fees" as being recoverable by the surety, as is provided in other code sections which specifically enumerate recoverable sums. See, e. g., T.C.A. §§ 2–1715, 8–4203, 30–520, 47–17–103, 48–915, 56–2120, and 67–2012. In each of the foregoing code sections, attorney's fees are expressly distinguished from "costs" of the action, which are generally understood to mean "court costs," including filing fees, service of process payments, and the like. Thus the fact that the statute in *Holt* specifically delineated two types of recoverable sums—interest and costs—while conspicuously omitting any express reference to attorney's fees, can reasonably be interpreted, under the maxim, *expressio unius est exclusio alterius,*[3] to exclude the recovery of attorney's fees. See *Equal Employment Opportunity Commission v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1362 (6th Cir. 1975); *Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857, 866 (1946).

The proposition enunciated in *Holt,* then suggests only that interest and court costs are recoverable from the principal by a surety who elects to defend itself in an action brought by the principal's obligee. *Holt* cannot be read, in light of the statute upon which it relies, to support the defendant surety's assertion that it is entitled to reimbursement for attorney's fees from the defendant Crow.

The other case cited by the defendant surety in support of its claim for attorney's fees, *Bristol v. Bostwick, supra,* is clearly inapposite. In that case, a bond issued by a surety guaranteeing the faithful performance of a contractor contained an indemnity clause with "plain, broad, and unambiguous" language providing that the surety would hold the plaintiff city "harmless against claims of every description incurred in suits or otherwise growing out of the prosecution of the work" being performed by the contractor. The court held that the language of the surety's indemnity agreement was sufficiently comprehensive to include "the fees of counsel incurred by the city in good faith." The court further held that certain materialmen and laborers who had filed claims on the bond should bear half the expense of the city's counsel fees since they had benefitted directly from the city's successful prosecution of the claim.

Nowhere in *Bostwick* is the principal's liability to the surety for attorney's fees even mentioned. Moreover, the question of liability for attorney's fees arose out of an express contractual undertaking which is glaringly absent in the case at bar. In short, both the facts and issues in *Bostwick* are so manifestly dissimilar to any in the instant suit as to render it totally inapposite.

As the court stated in *Deyerle v. Wright Mfg. Co.,* 496 F.2d 45, 55 (6th Cir. 1974),

As a general rule, American jurisprudence does not sanction the award of attorneys' fees unless provided for by statute or contract. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).[4]

---

**2.** As the textual discussion which follows will demonstrate, the term "costs" in *Holt* is used in a different context than in *Overton, supra,* and hence has a different meaning. In *Overton* the term seems to refer to general expenses of litigation, including attorney's fees, while in *Holt,* the term derives its meaning from the statute upon which the court relies, and thus is more restricted in its implications.

**3.** "the expression of one thing implies the exclusion of another thing." J. Ballentine, *Ballentine's Law Dictionary* 442 (3d ed. 1969).

**4.** This principle, as applied to suretyship agreements, finds support in the general treatise material:

The absence of any controlling statutory or contractual provisions in the instant case has already been discussed. Indeed, even when express contractual provisions are present, the courts of Tennessee have in recent years seen fit to deny a surety attorney's fees from its principal under certain circumstances. In *Central Towers Apartments, Inc. v. Martin,* 61 Tenn.App. 244, 453 S.W.2d 789 (1969), cert. denied, the court denied recovery to a surety for attorney's fees, despite the fact that the principal had executed an agreement expressly promising to hold the surety "harmless from and against any and all claim, liability, cost, charge, counsel fee (including fees of special counsel), expense, suit, order, judgment and adjudication whatsoever," provided such expense was incurred in good faith by the surety. The court reasoned that the circumstances surrounding the suit against the principal and surety in that case did not reasonably warrant a separate defense by the surety at the expense of the principal, and hence that the surety had not acted in good faith, as required by the indemnity agreement, in employing separate counsel.

■ The factual pattern in the case at bar is admittedly somewhat different than that in *Martin.* It is arguable that the defendant surety in the instant suit had good cause to employ separate counsel since the defendant Crow had refused to provide it a defense and had undertaken his own defense *pro se.* However, the crucial issue in the present case is not whether the defendant surety was justified in retaining separate counsel, but rather who should bear the expense of that counsel. While the equities inherent in suretyship arrangements might seem at first blush to dictate in favor of the principal bearing the expense of legal representation necessitated by his own default, the simple fact remains that the defendant surety in this case neglected to protect itself by the simple and routine expedient of requiring a bond application containing an indemnity clause. Such an oversight by an obviously astute business entity, especially where indemnification agreements are a commonplace condition precedent to the issuance of bonds by sureties, cannot be overlooked by this court.

For the reasons hereinabove stated, therefore, the court finds that the defendant United States Fidelity & Guaranty Company must bear the expense of its own counsel's fees, and there being no pertinent statutory or contractual provisions to the contrary, is not entitled to indemnity for that amount from its principal, J. Harvey Crow.

■ It is clear that time was of the essence in the tile contract and was so established by the plaintiff and defendant Crow in the original contract for the delivery of the tile between December 1 and December 15, 1973. However, defendant Crow acquiesced in the repeated delays in performance by plaintiff, and elected not to terminate the contract for nonperformance when delivery was not made by December 15, 1973. Thus, he waived the performance date (T.C.A. § 47–2–209) and the plaintiff was required to perform within a reasonable time thereafter. T.C.A. § 47–2–309, official comment 5; *Petway v. Loew's Nashville & Knoxville Corporation,* 22 Tenn.App. 59, 117 S.W.2d 975 (1938), cert. denied; *Friedman v. Georgia Showcase Co.,* 27 Tenn.App. 574, 183 S.W.2d 9 (1944), cert. denied. Plaintiff promised delivery thereafter on specific dates but on each failure there was no termination of the contract. As stated above, defendant Crow subsequently accepted the goods. The court cannot hold that the goods were not delivered within a reasonable time after the last promised delivery date. Thus, plaintiff is entitled to recover the sum of $445.44, the

"Since a surety, in respect of his right to indemnity from the principal, is a simple contract creditor of the principal, in the absence of a contract or statute giving him the right, no cause of action to recover costs and expenses, *such as attorneys' fees,* arises against the principal and in favor of the surety unless he has satisfied all or some part of the principal's obligation." 74 Am.Jur.2d Suretyship § 199 at p. 135 (emphasis added, citations omitted).
See also 124 A.L.R. 1175, and cases cited therein.

contract price, less defendant's credit for the returned tile.

 The evidence reflects that defendant Crow could have obtained the tile from other sources and failed to do so. Thus, he failed to mitigate his damages. This alone would defeat his contention. *Gibson v. Gillia,* 45 Tenn.App. 193, 321 S.W.2d 855 (1958). See also, *Anderson Gregory Co., Inc. v. Lea,* 51 Tenn.App. 612, 370 S.W.2d 934 (1963).

An order will be entered providing: a recovery of $445.44 by plaintiff from defendants Crow and United States Fidelity & Guaranty Company; dismissal of the claim of Crow against plaintiff; and dismissal of the claim for attorney's fees of United States Fidelity & Guaranty Company against Crow.

In the exercise of its discretion, the court assesses all costs against the plaintiff.