PETWAY v. LOEW'S NASHVILLE & KNOXVILLE CORPORATION et al.—117 S. W. (2d) 975.

Middle Section. March 14, 1938.

Petition for Certiorari denied by Supreme Court, June 11, 1938.

Jack Norman, of Nashville, for plaintiff in error Petway.

Levine & Levine, of Nashville, for defendants in error Loew's Nashville & Knoxville Corporation and others.

CROWNOVER, J.—This is a suit to recover $8000 damages for the breach of a contract by a motion picture company to sell 40,000 admission tickets, at a discount, to the plaintiff, Petway, to be resold by him by means of a contest.

The defendants filed pleas in abatement and demurrers which were overruled, and later pleaded the general issue of not guilty and filed a special plea denying that they had entered into a contract with the plaintiff.

The case was tried by the judge and a jury.

At the close of the plaintiff's evidence the defendants moved the court for peremptory instructions in their favor on the grounds (1) that the plaintiff had no license to sell theatre tickets, therefore he could not maintain this action; (2) that the alleged contract was signed by R. L. Jones, who had no authority to bind the corporations; (3) that no contract between the parties was ever finally consummated; and (4) that the alleged contract was cancelled by the plaintiff.

The trial judge sustained the motion and directed the jury to return a verdict in favor of the defendants, which was accordingly done, and a judgment was entered dismissing the plaintiff's action.

The plaintiff moved the court to grant him a new trial "for the reason that the court peremptorily instructed the jury to return a verdict for the defendants at the close of the testimony of the wit-

ness, O. J. Petway, plaintiff, and refused to let the jury hear the rest of the plaintiff's testimony, all of which was error." The court overruled the motion, to which the plaintiff excepted, and appealed in error to this court and has assigned errors as follows:

"(1) The trial court erred in holding on the motion for a directed verdict that the Revenue Bill of 1932, laying a privilege tax on dealers in theatre tickets, had any application to the plaintiff.

"(2) The trial court erred in holding on the motion for a directed verdict that the plaintiff had not paid the privilege tax required by the Revenue Act of 1932, even conceding for purposes of argument that he was liable for such tax.

"(3) The trial court erred in holding there was no contract shown between Loew's Theatre or either of the defendants with the plaintiff.

"(4) The trial court erred in holding that the plaintiff had cancelled his contract with the defendant.

"(5) The trial court erred in holding that the agent, Jones, had no authority to bind the defendants."

We are of the opinion that the error assigned in the motion for a new trial raises the four propositions involved in the assignments of errors.

O. J. Petway, the plaintiff, formulated a plan to purchase about 40,000 admission tickets from each of several motion picture houses in Nashville at 25c per ticket (a discount of 10c per ticket), and to sell these tickets at 35c each, through girls, to be engaged in a contest, in which the girls selling the largest number of tickets and writing the best themes on the subject of the local theatres, should be given by him a bus trip through the West.

He called on R. L. Jones, local manager of Loew's Nashville & Knoxville Corporation, which is a subsidiary corporation of Loew's Incorporated, in regard to making such a contract with them. Jones informed him that the matter would have to be submitted first to the district office at Atlanta, Ga., and finally to the New York office of Loew's, Incorporated.

Jones wrote the following letter to the Atlanta office:

"I have been offered an opportunity to sell 3,000 35c tickets at a reduced price of 25c each.

"This offer is made in conjunction with a contest to be advertised in the Shop and Play, weekly newspaper, and the Nashville Tennessean. There will be two theatres in the set up. The Princess, at the present time, is supposed to be the other theatre, but this may be changed when Mr. Sudekum returns to the city in a day or so.

"We are to turn over to the Chartered Rate Service Company (the name used by Petway), 415-½ Church Street, who are conducting

the contest, 3,000 tickets redeemable at this theatre any time before September 1st, and receive $750 at the time the tickets are turned over to them.

"These tickets will be sold in groups of twelve, at their face value. With each twelve tickets sold the purchaser will receive a sheet of composition paper, on which they may write a 100 word composition on 'Why I prefer Loew's Theatre.' 250 of these entries will constitute one group, one of which will receive a trip by Greyhound Bus, as outlined in the enclosed papers. They expect to sell enough tickets to have from twenty to thirty passengers for a special chartered bus.

"It has been agreed that we are not to make any refund for any of these 3,000 tickets that are not sold. In other words, we are assured of a cash sale of at least 3,000 tickets and if the idea goes over big it should run into several thousand, as it will take 3,000 tickets for each winner, and they expect to have between twenty and thirty winners.

"In the event we make this deal, may I suggest that we have special tickets, which would be exchanged at the box office for regular tickets. In this way we would be able to obtain a definite account of how many tickets were used and how much of the money should be applied to each week.

"They are anxious to start this contest immediately and have asked me to advise them as soon as possible if this set up is okay with our Company. Therefore, I will appreciate your reaction and suggestions in this regard as soon as possible.

"I am enclosing mimeographed copies (which are to be returned to them) of contest rules, etc., which will be included in the advertisements in the papers. The advertisements in the Tennessean Papers will be 5 col. x 14″ and will run one day, morning and evening. This same ad, which is the size of a Shop and Play full page, will run four different times (4 weeks) in the Shop and Play. We receive theatre mention in these advertisements."

That office approved the plan and referred the same to the New York office, the main office. The New York office, on June 28th, wired Jones as follows:

"You can make arrangements with bus tieup where you sell matinee tickets at 10c discounts regards."

"[Signed] J. R. Vogel."

Jones and Petway then entered into the following agreement:

"June 28, 1935.

"Agreement between O. J. Petway and R. L. Jones. (Chartered Rate Service and Loew's Theatre.)

"O. J. Petway agrees to purchase 3000 35c tickets @ 25c each ($750) not later than July 5, 1935 and to post, as soon as notified

by Loew's NY office, cash guarantee to cover cost of printing of any of the 40,000 tickets (forty thousand tickets) not sold by September 1st. All tickets are to be sold at face value of 35c each by Mr. Petway or his agents. Loew's Theatre is to make no refunds on tickets sold by Mr. Petway. No refund will be made to Mr. Petway for any of the first 3000 tickets sold to him. Theatre will refund to Mr. Petway for any tickets purchased by him in excess of the original 3000, which may remain unsold at the closing date, August 31. Theatre will accept these tickets as payment in full or in part for one admission. Tickets are void after September 1, 1935.''

"Signed:    O. J. Petway                                 R. L. Jones

"Witnesses:  E. F. Edwards                             B. E. Fry.''

On the morning of the 29th a night letter was received by Jones from New York asking how many tickets would be required and the style of the ticket. Jones wired as follows:

"Retel bus tieup prefer continuous strips of one thousand numbered tickets each. If not okay print in groups of twelve. Copy as follows 'Loew's Theatre Special Tour Ticket. Good for one 35c admission. Void after September 1st, 1935. No refund on this ticket. Please present to doorman.' Vendor wants 40,000 tickets available to start and has agreed to pay for cost of printing of unsold tickets and will post cash guarantee. Please advise amount required. Retel Mr. Vogel agreement these tickets to be honored as regular 35c ticket. Please note our price scale. Regards.

"Raymond L. Jones.''

The New York office answered:

"See no reason why we should give tickets to bus company without having full payment at any time. We can print up 40,000 tickets and give them whatever number they request direct from the theatre from time to time in groups of 3,000 or less they to pay you as they take the tickets. Advise if ok we will go ahead and print them. Regards.

"John Murphy.''

Petway did not see this last telegram.

On June 28, 1935, Petway entered into a contract with the Knickerbocker Theatre for the sale of tickets on the same plan.

He began advertising the contest in the newspapers, formed an organization for the sale of the tickets of the Knickerbocker and Loew's, and sixty-five contestants began selling the Knickerbocker tickets. The contestants wished to be supplied with the tickets to Loew's to sell at the same time to persons who did not wish Knickerbocker tickets.

The tickets for Loew's Theatre did not arrive from New York on July 5th. On July 5th, 6th, 7th, and 8th Petway called Loew's sev-

eral times a day asking for the tickets. Jones assured him each time that they would possibly arrive on the next mail.

On July 8th Petway mailed the following letter to Loew's cancelling his contract:

"Nashville seven p. m. July 8, 1935.

"Loew's Vendrome Theater, Nashville, Tennessee, and Loew's Incorporated, New York, New York. Attention Mr. R. L. Jones, Manager.

"Dear Sir: From legal advice from my attorney, I wish to inform you that agreement or contract signed by you and myself June 28, 1935, approved by Loew's, Inc. New York office is cancelled.

"Under our agreement it states that you were to furnish tickets to me not later than July, 1935. I have run advertisements and have gone to lots of expense to carry out my contract. Have interviewed some two hundred (200) or more girls and larger portion have gone out very much interested, and a great many have gone out with Knickerbocker Theatre tickets.

"Constantly have calls come in, also contestants in regard to why not tickets of Loew's Vendome. Several have told me they called for you in regard to same.

"I trust that you understand my position and loss, being under agreement with the Knickerbocker Theater.

"After further consultation with my attorney, I will call and see the Manager, Mr. Mousson, of the Knickerbocker Theatre.

"I shall proceed under council's advice."

Jones telephoned Petway, on receipt of this letter, and reopened negotiations.

On July 10th Petway made the following offer to Loew's:

"If you can make arrangements or get approval in which you can give those that are desiring immediately tickets, other tickets to substitute and the other tickets to be here Monday, the 15th, and deliver the substitutes tomorrow afternoon not later than 2 P. M. and place at Bauman's Men's Shop, Warner Building, a young lady to handle tickets both Loew's and Knickerbocker tickets, receiving all the cash for both tickets, separating the Loew's sales and the monies and turning them over to the Manager of Loew's Theatre all money for said tickets each day, I will pay the young lady $2.00 per day (day from 8 A. M. until 5:30 P. M.), and have an assistant to relieve and conduct said sale of tickets until the agreement or contract fulfilled fully; also agreeing to extend the void date on tickets until October 1st.

"Sale of 3,000 tickets amounting to $1050.00, to be handled by the management of the Theatre in the following manner:

" '$750.00 to be Loew's Vendome, $150.00 to be deposited to guarantee the contestant a trip, the balance to be reinvested in Loew's

Theatre tickets. After 3,000 tickets are sold the Theatre management will be released from handling any of the funds of the sale of tickets or the employment of the girl. This contract voids previous agreement between Mr. O. J. Petway and R. L. Jones. In the event 3,000 tickets are not sold Loew's Theatre will receive 25c for each ticket sold. Unless mutually agreed otherwise by both theatres and Mr. Petway the contest ends August 5th' ''

On July 11th the attorneys for Loew's wrote the following letter to Petway and sent it to him by a messenger:

''Chartered Rate Service,

''Mr. O. J. Petway,

''Nashville, Tenn.

''Gentlemen: In re: Relationship between Loew's Theatre and Chartered Rate Service.

''In an endeavor to work out this matter which the writer, who is local counsel for Loew's, has been tentatively put in charge of, this suggestion is made—'Shop and Play' have contracted with you for certain space, copy of which must be furnished at once, and it is evident that I would be unable to definitely work out anything, without delaying the paper going to press and in order to save further loss and without either party waiving any of their rights, but each especially reserving them, it is suggested that the copy be furnished this publication and run just in the same way as if all things were working harmoniously and the letter of cancellation from O. J. Petway, dated 7:00 P. M., July 8, 1935, had not been sent (that is for the purpose of this understanding) and in the event there is no adjustment made or the parties do not get together, then the fact of this publication in 'Shop and Play' which will be issued on July 12th, will not be taken into consideration at all, but the status of both parties and the right of both will be reserved and will be just the same as they are now, that is prior to this publication.

''If this is thoroughly understood and acceptable, the notation of yours upon the carbon copy will in my judgment assist in the immediate dilemma.

''Very truly yours,

''Alfred T. Levine.''

On July 11th, after 2 P. M., Loew's attorney telephoned Petway in regard to the contract; Petway told him to see his lawyers, and refused to further negotiate.

Several of the plaintiff's assignments of errors must be sustained; but the determinative question in this suit—whether Petway can recover damages for breach of his contract—must be decided against him.

█ 1 and 2. The plaintiff was not liable for a privilege tax for selling motion picture tickets.

Code, sec. 1248.11, pp. 122, 123, provides for a tax on motion picture shows, and a different tax on theatres. It also provides for a tax on "Dealers in Theatre Tickets." This tax on dealers in theatre tickets cannot be construed to apply to motion picture tickets, as the revenue bill makes a distinction between motion picture shows and theatres.

Even if Petway had been liable for this tax under Code, sec. 1248.11, his failure to pay the tax would not have precluded his recovery in this case, if he had been entitled to recover, because this contract was not one made in pursuance of the business of selling tickets, but was a contract between the motion picture company and Petway under which the motion picture company agreed to sell tickets to Petway, to be later sold by him.

Furthermore, the defendants did not plead that the plaintiff was exercising a taxable privilege without paying the tax and procuring a license. Such a defense can be considered only when pleaded and proved. Rugg v. Green, 2 Tenn. App., 406; 8 Am. Jur. 1116, sec. 220; 9 C. J. 646.

3, 4, and 5. The plaintiff in error's assignments numbers 3, 4 and 5 raise the questions whether the contract entered into between Petway and Jones was completed, whether Jones had authority to bind the company, and whether under Petway's rescission of the contract he was precluded from recovering damages from the defendants.

We are of the opinion that Vogel's telegram to Jones, hereinabove set out, authorized him to make this contract; that the telegrams that passed between Jones and the New York office on June 29th, after Jones and Petway had made the contract on the 28th, were discussions of mere details; and that the contract executed by Jones and Petway was completed on the 28th.

We are further of the opinion that time was of the essence of the contract, and that the tickets should have been delivered to Petway by July 5th.

But Petway waived this provision by insisting on the delivery of the tickets on the 6th and on the 7th. He had a right to claim rescission on July 5th, but he did not do so; he continued negotiations until July 8th.

"Although by the contract time is made of its essence, the parties may waive such provision by a subsequent agreement, or by conduct indicating an intention to regard the contract as still in force after default." 13 C. J. 689, sec. 784.

On July 8th Petway wrote a letter to the Company merely informing it that he was cancelling his contract. This letter does not demand performance after a reasonable time, which notice Petway was due to give Loew's after having waived delivery of the tickets on July 5th.

"Where a stipulation for performance at a particular time has been waived, the party in whose favor the waiver operates is thereafter bound only to perform within a reasonable time, except in a case where there has been a specific extension of time, in which case it is held that the new time fixed becomes of the essence, as was the case in the original contract. So, where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind until full notice and a reasonable time for performance is given." 13 C. J. 690, sec. 784; Houston Bros. v. Planing Mill, 159 Tenn., 10, 15 S. W. (2d), 749; Thompson v. Menefee, 6 Tenn. App., 118; Vosburg v. Southern Lumber & Mfg. Co., 147 Tenn., 647, 251 S. W., 41; Tennessee Fertilizer Co. v. International Agr. Corp., 146 Tenn., 451, 243 S. W. 81; Wildberg Box Co. v. Darby, 143 Tenn., 73, 223 S. W. 855; 24 R. C. L., 284, sec. 563.

"The failure of a seller to deliver on time confers upon the buyer the option to either treat the contract as terminated, or waive the time limit and insist on the delivery, within a reasonable time. After the buyer has waived the time limit and insisted on delivery under the contract, he cannot put the seller in default without first giving notice of his desire to receive the purchased property with the offer of reasonable time for making the delivery after notice." Lowy v. Rosengrant, 196 Ala., 337, 71 So., 439, 441; Thompson v. Menefee, 6 Tenn. App., 118.

Petway elected to continue the contract in force after July 5, 1935, and the contract was in force and was not rescinded or terminated until he wrote the company, on July 8th, to cancel it. He thereby terminated the contract.

But the parties later had another conversation in which it appears the matter was again reopened. But on July 10th Petway wrote the defendants offering to reinstate the contract if they would deliver substitute tickets by the 11th at two o'clock P. M., and furnish young ladies to sell them. This new offer provided, "This contract voids previous agreement." This was a new proposition. But it appears that the defendants, through their attorney, on the 11th undertook to adjust the matter, but Petway declined because one hour more had elapsed than the twenty-four hours he had allowed for acceptance in his letter of the 10th.

Petway could have sued for a breach of the contract after July 5th without any notice. Or he and the defendants could have agreed upon a specific extension of time, or he could have reinstated time as of the essence of the contract, after waiver, by giving the defendants notice that he would rescind at the expiration of a reasonable time, and hold it liable for damages for breaching the contract. This, however, he did not do, but terminated the contract without giving the defendants proper notice. Having terminated it with-

out giving the required notice, he thereby breached the contract and precluded himself from recovering damages from the defendants under that contract. He then made a new offer, but on the defendents offering to negotiate with him, he refused to go further, and is precluded from a recovery.

The fourth assignment of error having been overruled, which is determinative of the case, it results that the judgment of the lower court dismissing the suit is affirmed. The costs of the cause including the costs of the appeal are adjudged against O. J. Petway.

Faw, P. J., and Felts, J., concur.

## On Petition for Rehearing.

CROWNOVER, J. ▓▓ This case is again before us on a petition for a rehearing, it being insisted that the twenty-four hours' time given by Petway in his letter for the performance of the contract was a reasonable time, as the tickets could have been printed in two hours. This petition must be denied for the reasons stated in our original opinion, that is, the last letter written by Petway, giving twenty-four hours in which to comply, added new conditions: that the company should deliver substitute tickets not later than 2 P. M., and place at Bauman's Shop in the Warner Building a young lady to handle both Loew's and Knickerbocker tickets, receiving all cash for both tickets, and to separate the Loew's sales and the monies therefor and turn over to the manager of Loew's Theatre all money for said tickets each day, and she was to have an assistant to relieve her and to conduct the sale of said tickets until the agreement was fulfilled. The letter further provided that the expiration date of the tickets was extended to October 1st, and that Petway was to pay $750 to Loew's Theatre, $150 to be deposited as a guarantee for the contestants' trip. It also provided that this new "contract voids previous agreement," the terms of which are set out in the original opinion.

We held that this constituted a new proposition, different from the old agreement, and he gave the theatre company twenty-four hours to accept this proposition, which was not accepted. The extension of time for the fulfillment of the original contract was there made conditional upon the theatre's agreeing to do additional things not provided for in the original contract, and these things were required to be done within twenty-four hours. One hour after the time expired the attorney for the theatre telephoned Petway and tried to adjust the matter, but Petway refused to further negotiate. As held by us in the original opinion, the plaintiff below, Petway, should have set a reasonable time for the performance of the contract without adding any additional conditions to it. In other words, after the contract had been revived, it was necessary to give the defendants reasonable time in which to comply in order to make time as of the

essence of the contract, and we think that the letter of July 10th, adding other conditions to the proposition, was not notice to comply under the old contract but was a new proposition.

An offer must be unconditionally accepted, and if the acceptance is conditional or the terms are varied from the offer this constitutes a new offer and cannot be relied upon as an acceptance of the original offer. 13 C. J., 281; Canton Cotton Mills v. Overall Company, 149 Tenn., 18, 257 S. W. 398.

The same is true of notice to comply in order to make time as of the essence of the contract.

It results that the petition for a rehearing must be denied and the costs adjudged against Petway.

Felts, J., concurs.