James L. DISNEY, et ux.,
Plaintiffs-Appellees,

v.

Eugene S. HENRY, et ux.,
Defendants-Appellants.

Court of Appeals of Tennessee,
Eastern Section.

May 25, 1983.

Permission to Appeal Denied by
Supreme Court Aug. 29, 1983.

Buxton, Lain & Buxton, Oak Ridge, for defendants-appellants.

William E. Lantrip, Oak Ridge, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

The chancellor's decree ordering the defendants to sell a house and acreage in Clinton, Tennessee to plaintiffs is challenged on appeal.

Defendant owners argue there was no contract of sale between the parties, the description of the property does not comply with the Statute of Frauds, and the chancellor improperly invoked the doctrine of equitable estoppel.

On August 15, 1981, defendants listed the property with a real estate agent and moved to the State of Washington. Plaintiffs became interested in the property through another real estate agent and made a written offer of $59,000.00. This offer was made known to defendants by their agent and the offer was rejected and defendants indicated they would accept no less than $62,000.00. On September 8, 1981, plaintiffs executed another written offer to purchase for a sales price of $62,000.00, which offer described the property as "Box 342, Block House Valley Road, Clinton, Tennessee 37716, containing 3.68 acres." The agreement further provided for acceptance within 72 hours.

Defendants were again contacted by their agent, who advised of the offer. Defendants requested a copy of the sales agreement be forwarded to them; however, the agent indicated there was not enough time to mail the agreement within the time limitation. The agent read to Mr. Henry the provisions of the sales agreement and discussed rental should the purchasers desire to move into the residence prior to closing. The agent suggested defendants send a mailgram accepting the offer and the contract would then be mailed to them. Defendants sent the mailgram accepting the offer with this statement: "subject to review and approval of terms and conditions in the contract ..." Due to a mistake by the agent the contract was not properly mailed to defendants until September 16. On September 17, defendants contacted the agent inquiring about the contract; subsequently defendants received the contract but did not return it to the agent. The agent called defendants on several occasions advising of the progress toward closing and inquiring whether the contract had been mailed to the agent.

Meanwhile, plaintiffs had called defendants on September 10, 1981, and the parties agreed to a rental of $425.00 per month, to be paid until the closing. A notation of the rental agreement bearing defendant Henry's initials appears on a copy of the contract in defendants' possession.

Plaintiffs moved into the residence, sold their home and made improvements to the property. Rental checks were delivered to and accepted by defendants beginning in October. Plaintiffs' loan was approved on November 11 and a closing date set; however, on November 19, defendants notified their agent to take the property off the market.

■ The chancellor determined the parties entered into a binding contractual obligation; however, defendants contend the acceptance by mailgram of the plaintiffs' offer did not create a contract since it varied the terms of the initial offer. They argue the mailgram was, in fact, a counteroffer and rely on *Canton Cotton Mills v. Overall Co.*, 149 Tenn. 18, 257 S.W. 398 (1923) and *Petway v. Loew's Nashville & Knoxville Corporation*, 22 Tenn.App. 59, 117 S.W.2d 975 (1938). These cases contain broad language that an offer must be "unconditionally accepted, and if the acceptance is conditional or the terms are varied from the offer, this constitutes a new offer and cannot be relied upon as an acceptance of the original offer." These cases do not control since in both the terms of the contract were materially changed. In the instant case, defendants accepted the contract as conveyed by the real estate agent subject only to a reading of the contract to ensure

that its terms had been accurately related to defendants. No alteration of the terms or additions or deletions to the terms were involved.

■ Parties may accept the terms of a contract and make the contract conditional upon some other event or occurrence. *See Strickland v. City of Lawrenceburg,* 611 S.W.2d 832 (Tenn.App.1980). In this case the defendants, after receiving the contract, did not object to any terms of the contract, allowed plaintiffs to move into the dwelling and were aware from their conversations with their agent that plaintiffs were procuring financing in preparation for the closing. Defendants' failure to disapprove the terms and conditions of the contract within a reasonable time validated the acceptance.

■ Defendants argue the description of the property is inadequate and the case comes within the rule that courts will not enforce agreements for the sale of land where the description is ambiguous. The general rule expressed in the early case of *Dobson v. Litton,* 45 Tenn. 616 (1868), is where the description can only be applied to some existing tract of land, parol evidence may be employed to show the location of the tract. However, where the description may necessarily be applied to any one of an indefinite number of tracts, parol evidence is inadmissible to establish the location of the land. *Accord: Campbell Farmers Co-op v. Moore,* 202 Tenn. 215, 303 S.W.2d 735 (Tenn.1957); *Schultz v. Anderson,* 177 Tenn. 533, 151 S.W.2d 1068 (1941). *Cf. Branstetter v. Barnett,* 521 S.W.2d 818 (Tenn.App.1974), (where the court admitted parol evidence as to the exact location of "120 acres located in the 7th C.D. of Morgan County" on the theory that the tract was the only one owned by the defendant.)

■ The evidence establishes defendants own a larger tract of land of which the disputed tract is a part; however, the agreement is enforceable because this case falls within the rule announced in *Baliles v.*

*Cities Service Co.,* 578 S.W.2d 621 (Tenn. 1979). In that case, the court ordered specific performance on an estoppel theory although the description did not satisfy the Statute of Frauds.[1] In *Baliles,* the defendant had agreed to sell lots to one of its employees. A letter from the company indicated the agreement to sell "Lots 99 and 100 in Cherokee Hills for residential purposes." The employee encountered some financial difficulty after constructing a foundation and basement on one of the lots; he then assigned his interest in the lot to plaintiff, who sued for specific performance. *Baliles* states the purpose of the Statute of Frauds is to provide certainty and avoid fraud. The court relied on *Dobson* in holding the description was inadequate but recognized the harshness of the Statute of Frauds rule may be mitigated by the doctrine of equitable estoppel and concluded since defendant had placed plaintiff's assignor in possession, had permitted the construction of improvements to the property and had assisted defendant in securing a constructional loan, specific performance would be decreed.

In the instant case, defendants allowed plaintiffs to take possession of the property. Plaintiffs made limited improvements to the property and relied on the sales agreement in waiting to close the sale of their prior home until defendants had accepted the offer and also obtained permanent financing for the purchase. Defendants' argument that plaintiff's possession of the property was on the basis of a rental agreement is not persuasive since the rental agreement is an integral part of the sales agreement.

We affirm the chancellor's decision requiring specific performance of the sales agreement and assess costs to appellants.

PARROTT, P.J., and GODDARD, J., concur.

---

1. Defendants argue plaintiffs failed to affirmatively plead estoppel; however, the pleadings aver facts from which the doctrine of equitable estoppel may be gleaned. *See* T.R.C.P., Rule 8 and *Denny v. Wilson County,* 198 Tenn. 677, 281 S.W.2d 671 (1955).