IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**DICK MOORE, INC.,**

      Plaintiff-Appellant,

Vs.

**GREENTREE FINANCIAL
CORPORATION,**

      Defendant-Appellee.

Shelby Law No. 74748
C.A. No: 02A01-9707-CV-00148

**FILED**

**November 18, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**
_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE JAMES F. RUSSELL, JUDGE

R. Layne Holley; McNabb, Holley & Waldrop of Memphis
For Appellant

Roger A. Stone; Stone, Higgs & Drexler of Memphis
Joel E. Jordan; Steltemeier & Westbrook of Nashville
For Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This case involves a dispute involving the assignment of retail installment contracts.

Plaintiff-Appellant, Dick Moore, Inc. (Dick Moore), appeals from the trial court's order granting

Appellee's, Green Tree Financial Corporation (Green Tree), motion for summary judgment.

Dick Moore, a Tennessee corporation, entered into a dealer agreement with Green Tree, a foreign corporation doing business in Tennessee. Under such agreement, Green Tree would periodically buy from Dick Moore retail installment contracts generated by the sale of manufactured homes in connection with Dick Moore's business. The agreement provides, as pertinent to our inquiry:

> TO: GREEN TREE ACCEPTANCE, INC. (OR ITS SUBSIDIARY)
>
> Green Tree Financial Corp. - MS
> Jackson, MS
>
> Gentlemen:
>
> We desire from time to time to sell you conditional sales contracts, chattel mortgages, security agreements or other title restraining or lien instruments (hereinafter collectively referred to as "Contracts") evidencing the retail sale of mobile homes or manufactured homes (hereinafter referred to as "Property") on the following terms and conditions:
>
> 1. The purchase price of each Contract acceptable to you shall be an amount equal to the total of payments thereof less your charges thereon as agreed upon, and less any chargs stated in each Contract for any insurance policies to be placed by you. At the time of purchase, you shall pay to us an amount to be agreed upon. If any Contract assigned and/or endorsed to you by us does not bear a rate of finance charge acceptable to you, we agree that, at your sale option, we will tender to you an amoutn necessary to bring the rate of finance charge to a level acceptable to you.
>
> * * *

This was not an exclusive arrangement as Dick Moore had arrangements with several other lenders at this time and financed many sales directly.

Under the above agreement, Dick Moore assigned thirty-four contracts to Green Tree between May 1994 and August 1995. Generally the transaction proceeded as follows. Dick Moore would notify Green Tree after arranging a sale to a customer. Green Tree would then send a letter detailing its financing terms along with general and specific conditions for each applicant. After receipt of this from Green Tree, Dick Moore would gather the information required by Green Tree and then would tender this information along with the contracts to Green Tree.

During this arrangement, Dick Moore discovered that periods of time were elapsing between the tendering of the contracts to Green Tree and the receipt of payments from Green

Tree. Green Tree claimed that the delays resulted from Dick Moore's failure to provide, in a timely manner, documentation it required to insure the contract was in compliance with its funding conditions. After this had continued for some time, Dick Moore insisted that Green Tree pay interest on the late payments for the contracts. Green Tree refused prompting Dick Moore to file this suit for breach of contract and conversion.

Presented with motions for summary judgment by both parties, the trial court granted Green Tree's motion while denying Dick Moore's motion. The trial court granted summary judgment on grounds that the dealer agreement did not specify a payment date independent of the date of purchase nor did it provide for the accrual of interest between the time of tender and the time of payment. Dick Moore has appealed, and the only issue for review is whether the trial court erred in granting Green Tree's motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Dick Moore's action is premised on the dealer agreement between the parties. The interpretation of a written agreement is a matter of law and not of fact. *APAC-Tennessee v. J. M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. App. 1986). The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117 (Tenn. App. 1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. App. 1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. App. 1990).

Under the agreement, Green Tree purchased only the contracts acceptable to it and as noted makes the decision to purchase only after review of various documents that Dick Moore is required to furnish. The major part of the dealer agreement pertains to the rights and responsibilities of the parties after a contract is purchased. Essentially, as to the purchase of the contract, the agreement is merely an agreement to possibly agree. The trial court noted the absence of a provision for payment other than the purchase date. The dealer agreement simply does not create a binding agreement for the purchase of the contract, and the only binding agreement comes into existence with the purchase of each contract. The dealer agreement is, at best, a conditional contract.

"'A conditional contract is a contract whose very existence and performance depends upon the happening of some contingency or condition expressly stated therein.'" *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. App. 1986) (quoting *Real Estate Management*, 41 Tenn. App. at 353, 293 S.W.2d at 599). A condition precedent may be a condition which must be performed before the parties' agreement becomes a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. App. 1980). No liability under the contract attaches to either party until such condition precedent is fulfilled. *Id.* The parties to a contract may accept the terms of such contract and make the contract conditional upon some other event

4

or occurrence. *Disney v. Henry*, 656 S.W.2d 859, 861 (Tenn. App. 1983).

Under the dealer agreement and the subsequent letters and instruments which were a part of each transaction, Green Tree's acceptance for purchase was contingent on Dick Moore's fulfillment of conditions required by Green Tree. As previously stated, under the arrangement, Green Tree would send Dick Moore a laundry list of conditions that had to be met before Green Tree would purchase the contract. The credit approval letter Green Tree sent to Dick Moore for each applicant expressly stated: "Provided you and the prospective purchaser meet the conditions described below, we agree to acquire from you the applicant's retail installment contract in connection with the purchase by the applicant of the above described property." The credit approval letter further provided: "Stated terms of credit approval are subject to standard Green Tree underwriting requirements. Terms of credit approval are subject to change by Green Tree without prior notice to Dealers or Customers."

Until Green Tree was assured that each condition had been met, Green Tree did not find the contract acceptable for purchase. The record is replete with instances in which some of the conditions were not fulfilled until further documentation was received and with instances in which Green Tree required further information before purchasing some of the contracts.

This was not an exclusive arrangement between the parties. Dick Moore was under no obligation to sell the contracts to Green Tree. If Dick Moore was unhappy with the way Green Tree conducted its business, it had an array of other lenders to which it could have sold the contracts. As a matter of fact, there was nothing in the arrangement that prevented Dick Moore from withdrawing the contract before Green Tree's agreement to purchase. Furthermore, Green Tree was under no obligation to purchase the contracts until the conditions were fulfilled and it was satisfied with the deal. As provided for by the dealer agreement, there was no binding contract between the parties until Green Tree agreed to purchase the contract from Dick Moore. Until all conditions had been met and Green Tree was satisfied with such, there was no acceptance on the part of Green Tree. Thus, any delay Green Tree exercised before purchasing the contracts did not constitute a breach of contract under the circumstances of the arrangement between the parties.

Moreover, the dealer agreement provides for payment at the time of purchase of an amount agreed upon. In each of the transactions, Dick Moore accepted the purchase price paid

by Green Tree without voicing disagreement at the time of payment. Bearing in mind that Dick Moore was under no obligation to sell the contract to Green Tree, and considering the language of the agreement calling for payment of an amount agreed upon, the payment by Green Tree and the acceptance by Dick Moore establishes the agreed amount.

Accordingly, the order of the trial court is affirmed, and the case is remanded for such further proceedings as necessary. Costs of appeal are assessed against the appellant.