IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2016 Session[1]

## TIM GRACE v. JEANNA GRACE D/B/A GRACE TRUCKING

**Appeal from the Circuit Court for Decatur County**
**No. 12-CV-14          Charles C. McGinley, Judge**
_____

**No. W2016-00650-COA-R3-CV – Filed November 29, 2016**
_____

The plaintiff in a breach of contract action filed a motion to enforce a settlement agreement allegedly agreed to by the defendant. The defendant argued that there was no acceptance of the plaintiff's settlement offer; rather, the defendant contended that she responded to the plaintiff's offer with a counter-offer, which she revoked prior to its acceptance. The trial court found that the parties had entered into an enforceable settlement agreement but denied the plaintiff's request for attorney's fees. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Jeanna Grace d/b/a Grace Trucking.

Ricky L. Wood, Parsons, Tennessee, for the appellee, Tim Grace.

## OPINION

### Background

On June 8, 2012, Plaintiff/Appellee Tim Grace ("Appellee") filed a lawsuit against Defendant/Appellant Jeanna Grace d/b/a Grace Trucking ("Appellant") for breach of contract. The complaint alleged that the parties entered into a contract in which Appellant agreed to purchase a tractor from Appellee. According to the complaint, the tractor

---

[1] Oral argument in this case was heard at Union University in Jackson, Tennessee.

eventually "became disabled" in Wyoming, and Appellant refused to transport the tractor back to Tennessee. Thereafter, Appellant allegedly failed to make payments on the tractor as required by the parties' contract. Appellee was eventually able to transport the tractor back to Tennessee, and he then filed his complaint to recover his expenses and the depreciated value of the tractor due to Appellant's alleged failure to maintain the tractor in proper condition. In his complaint, Appellee sought $31,096.73 in damages, plus interest, storage expenses, attorney's fees, and costs. Appellee later amended his complaint to clarify his allegations.

Appellant filed an answer and counter-complaint on July 16, 2012. Therein, Appellant alleged that the tractor had mechanical defects that were not disclosed at the time of the parties' contract. Accordingly, Appellant alleged that she was required to expend funds to make the tractor "road ready," amounting to a total of $74,009.30. In addition, Appellant alleged that she had overpaid under the contract's terms, bringing the total requested damages to $99,476.30. On August 27, 2012, Appellee filed an answer to the counter-complaint, denying the material allegations contained therein and raising several affirmative defenses.

The matter was set for trial on August 1, 2013, but was continued in order to allow the parties to engage in court-ordered mediation. Thereafter, the parties unsuccessfully mediated the case. On March, 24, 2015, Appellant's counsel filed a motion to withdraw, which was granted by order of April 30, 2015. Eventually, Appellant obtained new counsel, Samuel W. Hinson, who filed a notice of appearance on October 29, 2015.

On February 16, 2016, Appellee filed a motion to enforce a settlement agreement allegedly entered into by the parties. The motion contained the following allegations:

> 1. On or about September 10, 2015, Ryan M. Hagenbrok, attorney in Savannah, Tennessee contacted [Appellee's] attorney to discuss settlement of the above case on behalf of [Appellant].[2]
> 2. Telephone conversations were exchanged and letters of offers and counteroffers were exchanged in effort to work out a compromised settlement and dismissal of lawsuit.
> 3. On September 10, 2015, a letter was e-mailed to [Attorney] Hagenbrok offering to settle, which attorney indicated was accepted by Defendant pursuant to a telephone call from [A]ttorney Hagenbrok with instructions for [Appellant's] attorney to prepare an Agreed Order of Dismissal with the terms of agreement. Attorney Hagenbrok stated that he did not represent [Appellant], but was conveying offer and acceptance and that the Order should not have his signature. . . .

---

[2] Mr. Hagenbrok filed no pleadings on behalf of Appellant in this case.

- 2 -

4. Attorney for [Appellee], prepared the Agreed Order for [Appellant] to sign and she was to tender the settlement check at the office of [Appellee's] attorney. . . .

5. [Appellant] in fact did show up at [Appellee's] attorney's office and requested that one item be added to the Order "dismissed with prejudice[."] The Order was corrected and [Appellant] said she would be back the next day to sign.

6. [Appellant] never came back to sign the Order or tender the payment, and indicated that she had changed her mind about settlement [and] would not sign.

Appellee therefore asked that the trial court enforce the settlement agreement that had been agreed to by Appellant. Appellee attached to his motion a letter from his counsel offering to settle the case for $10,700.00, as well as a proposed agreed order, which expressly stated that the case would be dismissed with prejudice. Later, Appellee's counsel filed an affidavit showing that Appellee had incurred $4,389.60 in attorney's fees after Appellant allegedly refused to sign the agreed order concerning the settlement agreement.

On February 17, 2016, Appellant filed a motion to amend her answer and counter-complaint. Appellant also asked for permission to complete additional discovery, which she argued had not been properly completed by her previous attorney. The trial court granted Appellant's motion to amend and for discovery on February 19, 2016.

On the same day, Appellant filed a response in opposition to Appellee's motion to enforce a settlement agreement between the parties. Therein, Appellant did not deny that Appellee had extended an offer of settlement but denied that the trial court was permitted to enter the consent order where she had revoked her acceptance prior to the entry of the judgment. Appellant also argued that there was no binding contract between the parties because there was no meeting of the minds. As is relevant to this appeal, Appellant asserted that after Appellee made his first offer, Appellant responded not with an acceptance but instead with a counter-offer to slightly alter the terms of the contract. Because this counter-offer had allegedly been revoked prior to its acceptance, Appellant contended that no enforceable contract existed.[3]

---

[3] Appellant also argued that the trial court could not enter the agreed order of settlement because she had revoked her consent to the agreed order prior to the order being approved and entered by the trial court. *See Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 600 (Tenn. 1987) (hereinafter "*Harbour I*") (holding that while a repudiated consent order could not be entered by the court under the circumstances, a "compromise agreement" could still constitute "a binding contract, subject to being enforced as other contracts"); *see also Harbour v. Brown*, No. 839, 1989 WL 22712, at *3 (Tenn. Ct. App. Mar. 17, 1989) (after remand in *Harbour I*, affirming the trial court's finding that the compromise agreement constituted a valid and enforceable contract between the parties) . The trial court agreed with Appellant on this issue, and no party has raised the trial court's refusal to enter the unsigned agreed order as an error on appeal.

On February 24, 2016, Appellee filed an answer to Appellant's amended counter-complaint, again denying the material allegations contained therein. The trial court held a hearing on the motion to enforce the settlement agreement on February 25, 2016. No evidence was taken during this hearing. On April 1, 2016, the trial court entered an order enforcing the settlement agreement as a binding contract between the parties. As is relevant to this appeal, the trial court found that a binding contract was created through the conduct of the parties, that Appellant's request to have the case dismissed with prejudice was implied by the dismissal of the case, and that even if the request for a dismissal with prejudice was considered a counter-offer, Appellee accepted the counter-offer. Accordingly, the trial court awarded Appellee possession of the tractor and $10,700.00 in damages. The trial court, however, denied Appellee's request for attorney's fees because they were not contemplated by the parties' contract. Finally, the trial court dismissed the underlying lawsuit with prejudice. Both parties filed timely notices of appeal.

## Issues Presented

Each party raises one issue in this appeal. First, Appellant argues that the "trial court erred by ruling that the attempted settlement agreement between Appellant and Appellee was an enforceable contract, when Appellee made the initial offer to settle, Appellant responded with a counter-offer, but Appellee never properly accepted that counter-offer prior to Appellant's revocation[.]"Appellee questions whether "the trial court erred in not awarding Appellee attorney's fees and interest as consequential and incidental damages for breach of settlement agreement or contract."

## Standard of Review

Our review of this case is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We accord no such presumption to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## Discussion
## Settlement Agreement

Appellant argues that the trial court erred in enforcing the alleged contract between the parties where there was no proper offer and acceptance. We must first note the state of the record in this case. Here, the trial court ruled on Appellee's motion to enforce the alleged settlement agreement on the basis of the parties' written submissions and oral arguments. Neither party objected to the lack of an evidentiary hearing in the trial court or on appeal. Where factual disputes are present, this procedure may prove inadequate. Having reviewed the filings in the trial court, as well as the parties' briefs,

however, we conclude that the material facts are undisputed in this case. Additionally, the determination of whether a contract has been formed is a question of law. ***German v. Ford***, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009) (citing ***Murray v. Tenn. Farmers Assurance Co.***, No. M2008-00115-COA-R3-CV, 2008 WL 3452410, at *2 (Tenn. Ct. App. Aug.12, 2008)). Accordingly, judgment as a matter of law on Appellee's motion was appropriate. *See* ***McMahan v. McMahan***, No. E2004-03032-COA-R3-CV, 2005 WL 3287475, at *4 (Tenn. Ct. App. Dec. 5, 2005) ("We can think of no reason why a motion would not be a proper method of enforcing a settlement[.]"). We therefore proceed to consider whether the trial court erred in finding an enforceable settlement contract in this case.

Where parties have reached a negotiated or mediated agreement, we have consistently applied the principles of contract law to determine whether, based upon that agreement, a judgment may be entered in a case. *See, e.g.*, ***Perkins v. Metro. Gov't of Nashville***, 380 S.W.3d 73, 80 (Tenn. 2012) (citing ***Waddle v. Elrod***, 367 S.W.3d 217, 222 (Tenn. 2012)) ("[S]ettlement agreements are contracts between the parties, and the rules governing the interpretation of contracts apply to settlement agreements."); ***Envtl. Abatement, Inc. v. Astrum R.E. Corp.***, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000) ("A compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law."); ***McMahan***, 2005 WL 3287475, at *4; ***Myers v. Myers***, No. E2004-01362-COA-R3-CV, 2005 WL 936925, at *1 (Tenn. Ct. App. April 22, 2005), *perm. app. denied*, (Tenn. Oct. 24, 2005); ***Persada v. Persada***, No. E2002-00397-COA-R3-CV, 2002 WL 31640564, at *1 (Tenn. Ct. App. Nov. 22, 2002); *see also* ***Ledbetter v. Ledbetter***, 163 S.W.3d 681, 683 (Tenn. 2005) (recognizing the general rule that settlement agreements could be enforceable as contracts but concluding that the oral mediation agreement at issue could not be enforced under contract principles due to mediation confidentiality rules). Under general principles of contract law, a contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms." ***Sweeten v. Trade Envelopes, Inc.***, 938 S.W.2d 383, 386 (Tenn. 1996) (internal quotations omitted); *see also* ***Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local # 3-677***, 811 S.W.2d 875, 879 (Tenn. 1991) (quoting ***Johnson v. Cent. Nat'l Ins. Co.***, 210 Tenn. 24, 34–35, 356 S.W.2d 277, 281 (1962) ("While a contract may be either expressed or implied, written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms . . . .")). Whether mutual assent has occurred must be determined not only from the words in the contract but also from "the situation, acts, and the conduct of the parties, and the attendant circumstances." ***McMahan***, 2005 WL 3287475, at *5 (quoting 17 Am. Jur. 2d *Contracts* § 4 (1991)).

Here, Appellant does not dispute that Appellee offered to settle the lawsuit for $10,700.00 plus Appellee's possession of the tractor. Appellant asserts, however, that she did not accept this offer, but instead made a counter-offer—that she would pay the sum and agree to the settlement only so long as the order dismissing the lawsuit included the

phrase "with prejudice" with regard to the dismissal. Appellant asserts that after making this counter-offer, she thereafter revoked it prior to Appellee's acceptance. The trial court gave two bases for rejecting Appellant's contentions: (1) that the alteration of the original agreement to insist that the order dismissing the case be with prejudice did not alter the terms of the agreement and therefore did not constitute a counter-offer; and (2) that even if Appellee's insistence that the order contain language regarding dismissal with prejudice was considered a counter-offer, such counter-offer was accepted by Appellee prior to Appellant's revocation. Because we agree with the trial court that Appellant's insistence that the order dismissing the case expressly state that the dismissal was with prejudice did not constitute a counter-offer, but instead was an acceptance of the terms of the contract, we need not consider the second basis for the trial court's ruling.

Appellant correctly points out: "Acceptance of an offer must be exactly and precisely in accord with the terms of the offer." *Westfall v. Brentwood Serv. Grp., Inc.*, No. E2000-01086-COA-R3-CV, 2000 WL 1721659, at *5 (Tenn. Ct. App. Nov. 17, 2000) (citing *Ray v. Thomas*, 232 S.W.2d 32, 35 (Tenn. 1950)). Where an offeree assents to an offer, but places conditions on his or her acceptance or varies the terms of the offer, "there is no acceptance, but rather the expression constitutes a rejection of the original offer and initiation of a new offer." *Westfall*, 2000 WL 1721659, at *5. As explained by the Tennessee Supreme Court:

> In order that there may be a meeting of the minds which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. There must be no variance between the acceptance and the offer. Accordingly a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modification suggested.

*Canton Cotton Mills v. Bowman Overall Co.*, 149 Tenn. 18, 31, 257 S.W. 398, 402 (1924) (internal citation omitted). Moreover, silence or inaction does not typically constitute acceptance, unless the circumstances indicate that such an inference is warranted. *Smith v. Murray*, 311 S.W.2d 591, 595 (Tenn. 1958).

We cannot agree, however, that Appellant's insistence that the order dismissing Appellee's lawsuit contain language regarding dismissal with prejudice constituted a counter-offer, rather than an acceptance. A similar argument was raised in *Disney v. Henry*, 656 S.W.2d 859 (Tenn. Ct. App. 1983), which involved a contract for the sale of real property. The plaintiff-buyer made an initial offer to the defendant-owners to buy the property. In response, the defendant-owners sent a "mailgram" accepting the offer with the following provision: "subject to review and approval of terms and conditions in the contract[.]" *Id.* at 860. The defendant-owners later refused to follow through with the sale. The plaintiff-buyers sued the defendant-owners to enforce the alleged contract, and

- 6 -

the trial court ruled that the contract was enforceable. On appeal, the defendant-owners argued that no contract had been formed because their "mailgram" constituted a counter-offer, rather than an acceptance, which counter-offer was not accepted by the plaintiff-buyers prior to its revocation. *Id.*

The Court of Appeals disagreed, holding that because the "mailgram" did not materially alter the terms of the offer, it did not constitute a counter-offer. *Disney*, 656 S.W.2d at 860–61. As explained by this Court:

> [D]efendants contend the acceptance by mailgram of the plaintiffs' offer did not create a contract since it varied the terms of the initial offer. They argue the mailgram was, in fact, a counter-offer and rely on *Canton Cotton Mills v. Overall Co.*, 149 Tenn. 18, 257 S.W. 398 (1923) and *Petway v. Loew's Nashville & Knoxville Corporation*, 22 Tenn. App. 59, 117 S.W.2d 975 (1938). These cases contain broad language that an offer must be "unconditionally accepted, and if the acceptance is conditional or the terms are varied from the offer, this constitutes a new offer and cannot be relied upon as an acceptance of the original offer." These cases do not control since in both the terms of the contract were materially changed. In the instant case, defendants accepted the contract as conveyed by the real estate agent subject only to a reading of the contract to ensure that its terms had been accurately related to defendants. **No alteration of the terms or additions or deletions to the terms were involved.**

*Id.* (emphasis added).

The same is true in this case. Here, the proposed order to dismiss the case would have dismissed the case with prejudice regardless of Appellant's insistence on express language to that effect. Indeed, Rule 41.02 of the Tennessee Rules of Civil Procedure specifically states, in relevant part, that:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this Rule 41, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits.

Tenn. R. Civ. P. 41.02(3). Appellant does not allege that the original agreed order offered by Appellee contained language indicating that the dismissal was without prejudice;[4]

---

[4] Unfortunately, the original proposed agreed order is not contained in the record. Instead, only the revised proposed agreed order was attached to Appellee's enforcement motion. However, in her brief, Appellant states only that she expressed her desire "that the words 'dismissed with prejudice' be **added** to the order." (emphasis added). Accordingly, Appellant does not allege that the modification of the order altered or deleted any of the language contained therein. The only reasonable inference from this

pursuant to Rule 41.02, the dismissal therefore operated as a dismissal with prejudice in spite of the lack of express language to that effect. As such, the terms of the parties' agreement was simply not altered by Appellant's insistence on such express language. Consequently, Appellant's undisputed acceptance of all the terms in Appellee's offer, other than her condition that the order contain such express language, did not constitute a counter-offer but instead was an acceptance of Appellee's offer to settle the lawsuit upon the offered terms. *See **Dick Moore, Inc. v. Greentree Fin. Corp.**, No. 02A01-9707-CV-00148, 1998 WL 802008, at \*3 (Tenn. Ct. App. Nov. 18, 1998) (citing **Disney**, 656 S.W.2d at 861) ("The parties to a contract may accept the terms of such contract and make the contract conditional upon some other event or occurrence."). There is no allegation that Appellee ever objected to this condition, and indeed the record reflects that Appellee revised its agreed order to comply with Appellant's stated condition. Accordingly, even taking the facts in the light most favorable to Appellant, we must agree with the trial court that a valid acceptance of Appellee's offer to settle the case took place in this case on or about September 10, 2015. The trial court, therefore, did not err in enforcing the oral settlement agreement between the parties. The second basis for the trial court's ruling is therefore pretermitted.

## Attorney's Fees

Appellee argues that, having found that an enforceable contract existed between the parties, the trial court erred in not awarding Appellee attorney's fees as consequential and incidental damages relative to Appellant's breach of contract. Here, the trial court denied Appellee's request for attorney's fees on the basis that no statute or contract between the parties provided for such an award. "Tennessee, like most jurisdictions, adheres to the 'American rule' for award of attorney fees." **Cracker Barrel Old Country Store, Inc. v. Epperson**, 284 S.W.3d 303, 308 (Tenn. 2009) (citing **John Kohl & Co. v. Dearborn & Ewing**, 977 S.W.2d 528, 534 (Tenn. 1998); **Pullman Standard, Inc. v. Abex Corp.**, 693 S.W.2d 336, 338 (Tenn. 1985)). Under the American rule, a party in a civil action may recover attorney's fees only where: "(1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." **Cracker Barrel**, 284 S.W.3d at 308 (citing **John Kohl**, 977 S.W.2d at 534).

Appellee concedes that no statute or contract at issue in this case provides for attorney's fees in favor of the prevailing party. Appellee asserts, however, that an exception to the American rule exists: that attorney's fees are appropriate as incidental and consequential damages incident to Appellant's breach of the parties' settlement agreement. "Generally, the courts may award all damages which are the normal and foreseeable results of a breach of contract." **Morrow v. Jones**, 165 S.W.3d 254, 259 (Tenn. Ct. App. 2004) (citing **Wills Elec. Co. v. Mirsaidi**, No. M2000-02477-COA-CV-

statement is that the order contained no language indicating that the dismissal was without prejudice.

R3, 2001 WL 1589119, at *4 (Tenn. Ct. App. Dec. 13, 2001); *Moore Constr. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1 (Tenn. Ct. App. 1985); *Bush v. Cathey*, 598 S.W.2d 777 (Tenn. Ct. App. 1979)). These damages include reasonably foreseeable incidental and consequential damages. *Morrow*, 165 S.W.3d at 259. Incidental damages are defined as "those damages 'which the law itself implies or presumes [to be] the immediate, direct or proximate result, or such as necessarily results from the injury, without reference to the special character, condition or circumstances of the plaintiff.'" *Wills Elec.*, 2001 WL 1589119, at *4 (quoting *Black's Law Dictionary* (6th ed. 1990)). In contrast, consequential damages do "not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." *Wills Elec.*, 2001 WL 1589119, at *4 (quoting *Black's Law Dictionary* (6th ed. 1990)). Rather, these "damages will only be awarded if they could reasonably be supposed to have been within the contemplation of the parties at the time of contracting, as a probable consequence of a breach of contract." *Wills Elec.*, 2001 WL 1589119, at *4 (citing *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854)); *see also Turner v. Benson*, 672 S.W.2d 752 (Tenn. 1984) (relying on *Baxendale*); *Lane v. Associated Hous. Developers*, 767 S.W.2d 640 (Tenn. Ct. App. 1988) (same).

In support of his argument that the attorney's fees in this case constitute consequential damages, Appellee cites *Edwards Moving & Rigging, Inc. v. Lack*, No. 2:14-CV-02100-JPM, 2015 WL 3891953 (W.D. Tenn. June 24, 2015). In *Edwards Moving*, the plaintiff sued his former employee for breach of a non-compete contract. In addition, the plaintiff sued the former employee's new employer ("defendant-employer") for tortious interference with a contract. *Id.* at *2. Eventually, the issue between the plaintiff and the former employee was decided by an agreed order. The plaintiff and the defendant-employer thereafter filed cross motions for summary judgment. The district court found that the plaintiff had proven all of the elements required to establish the tort of tortious interference, save the question of damages. *Id.* at *4–7.

The defendant-employer argued that no damages had been shown because the plaintiff's only damages were the attorney's fees incurred in prosecuting the action, which were not permitted absent some statute or contractual provisions specifically providing for such an award. *Id.* at *7. The plaintiff asserted, however, "that attorney's fees and expenses in enforcing a non-compete agreement are cognizable as damages in a tortious interference of contract claim under Tennessee law." *Id.* The district court agreed with the plaintiff, ruling that "[t]he American rule does not apply to consequential damages flowing from a separate harm." *Id.* at *8. Instead, the district court held that: "Under Tennessee law, '[o]ne who through the **tort** of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.'" *Id.* (emphasis added) (quoting *Engstrom v. Mayfield*, 195 F. App'x 444, 451 (6th Cir. 2006) (quoting *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985)). The district court

therefore ruled that the plaintiff was entitled to recover the attorney's fees incurred in enforcing the non-compete agreement against the former employee as damages in his tortious interference suit against the defendant-employer.

First, we note that *Edwards Moving* was decided by a federal district court. This Court is not bound by the interpretations of Tennessee law made by federal courts. *State v. Russell*, 382 S.W.3d 312, 316 (Tenn. 2012) (citing *Bredesen v. Tenn. Judicial Selection Comm'n*, 214 S.W.3d 419, 430 n. 6 (Tenn. 2007); *Wilson v. Rubin*, 104 S.W.3d 39, 48 n. 6 (Tenn. Ct. App. 2002)) ("[D]ecisions by federal courts interpreting Tennessee laws are not binding on our state courts."). Accordingly, we need not follow the holding in *Edwards Moving*.

In addition, it is important to note that the *Edwards Moving* case involved not simply the enforcement of a contract but also a tort claim—tortious interference with a contract: the *Edwards Moving* Court clearly distinguished between the enforcement action alleged against the former employee and the tort claim against the defendant-employer, noting the fact that "the enforcement action against [the former-employee] was joined to the instant tortious interference of contract action" did not defeat the plaintiff's attorney's fee claim. *Edwards Moving*, 2015 WL 3891953, at *8 (allowing attorney's fees as consequential damages from "a separate harm"—the defendant-employer's tortious interference with a contract). In our view, it was the tort action, rather than the contract enforcement action, that laid the foundation for the attorney's fees award. Indeed, the Tennessee case cited by the *Edwards Moving* court in support of its ruling, *Pullman*, specifically held that the attorney's fees award could be recovered in that case "under an independent tort theory." *Pullman*, 693 S.W.2d at 340 (citing 42 A.L.R.2d 1183 (1956)) ("It appears to be well settled that where the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act."). The *Pullman* court explained the theory as follows:

> One who through the **tort** of another has been required to act in the protection of his interests by bringing or defending an action against a **third person** is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

*Pullman*, 693 S.W.2d at 340 (emphasis added) (quoting *Restatement (Second) of Torts*, § 914(2) (1979)). The *Edwards Moving* court therefore ruled that the plaintiff could recover his expenses in enforcing the contract against his former employee from the third party defendant-employer because the enforcement action was necessitated by the defendant-employer's tortious interference with the contact. *Edwards Moving*, 2015 WL

- 10 -

3891953, at *8; *see also **Haney v. Copeland***, No. E2002-00845-COA-R3-CV, 2003 WL 553548, at *4 (Tenn. Ct. App. Feb. 27, 2003) (affirming without discussing the trial court's decision to award attorney's fees where the claims alleged were both breach of contract and fraud); **Bruce v. Olive,** No. 03A01-9509-CV-00310, 1996 WL 93580, at *6 (Tenn. Ct. App. Mar. 4, 1996) (allowing attorney's fees in an action for breach of contract and legal malpractice). *But see **Morrow v. Jones***, 165 S.W.3d 254, 260 (Tenn. Ct. App. 2004) (addressing an argument that another portion of the consequential damage award was erroneous, but simply stating without discussion that the attorney's fees were proper consequential damages for the breach of contract). In 2005, the Tennessee Supreme Court reaffirmed the independent tort theory as an exception to the American rule. *See **Engstrom v. Mayfield***, No. M2004-02661-SCR23CQ, 2005 WL 1812614, at *2 (Tenn. July 6, 2005) (dismissing a federal court's certified question).

The independent tort exception recognized in ***Pullman*** and applied by the federal district court in ***Edwards Moving*** simply does not apply in this case. First, we note that this case involves only claims between Appellee and Appellant. Accordingly, there can be no dispute that Appellee was not required to bring suit against a third party to protect his interests in the underlying lawsuit. *See **Pullman***, 693 S.W.2d at 340. Moreover, Appellee does not claim that Appellant committed a tort in this case, only that she breached the parties' oral settlement agreement. Without even an allegation of a tort, the independent tort theory certainly cannot apply to support an award of attorney's fees. Appellee asserts no other exception to the American rule that would justify an award of attorney's fees in this case. Accordingly, the trial court did not err in declining to grant Appellee the requested fees.

## Conclusion

The judgment of the Circuit Court of Decatur County is affirmed, and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Jeanna Grace d/b/a Grace Trucking, and her surety, and one-half to Appellee Tim Grace, and his surety, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 11 -