# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 19, 2004[1] Session

## SHARI PARKER MORROW, ET AL. v. FAY A. JONES

**Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0885-11-1     D. J. Alissandratos, Chancellor**

---

### No. W2002-01088-COA-R3-CV - Filed September 23, 2004

---

Plaintiff/Buyer brought a cause of action alleging breach of a real estate contract and seeking specific performance. The trial court entered judgment for Defendant/Seller. We affirm in part, modify in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Modified in part; and Remanded**

---

[1]This Court heard oral argument of this appeal on April 19, 2004. During the course of oral argument, counsel for the Appellee/Defendant informed the Court and counsel for the Appellant/Plaintiff that Appellee in this cause had died during the pendency of this appeal. Counsel for Appellee did not inform either this Court or Appellant of Appellee's death prior to her statement at oral argument. In accordance with Tennessee Rules of Appellate Procedure 19(a), this Court ordered Appellant Morrow to move for substitution of a proper party.

On May 14, 2004, Appellant Morrow, through counsel, moved this Court for an order of substitution of party. The motion stated that counsel had searched the probate records for Shelby County, Tennessee, and discovered there was no record of an estate in the name of the Appellee, Fay A. Jones, deceased. The motion stated that Movant would attempt to open an estate and asked that this matter be held in abeyance. By order of June 15, 2004, this Court ordered that the matter be held in abeyance pending substitution for Fay A. Jones, deceased. This Court ordered counsel for Appellant to provide this Court with a status report within fifteen days from the date of filing of the order.

On July 2, 2004, Appellant Morrow filed a status report stating that a petition to open estate was filed in the Shelby County Probate Court on June 3, 2004. It was further reported that counsel for the Appellee stated that she would attempt to locate a family member of the deceased who would be willing to serve as an administrator of the deceased's estate.

On August 2, 2004, Appellant Morrow filed a Notice of Appointment of Administrator *Ad Litem* and attached a copy of an order entered in the probate court of Shelby County appointing Clary Lunsford, an attorney, as administrator *ad litem* of the estate of Fay A. Jones, deceased. The order further provided that said administrator *ad litem* is to serve in the place and stead of the Defendant/Appellee Fay A. Jones, deceased.

This Court granted the motion for substitution of party on August 19, 2004, and the said Clary Lunsford, administrator *ad litem*, has been substituted in the place and stead of Fay A. Jones, deceased, the Appellee in this matter.

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Margaret Barr-Myers and Susan L. Ratner, Memphis, Tennessee, and Norris A. Kessler, II, Winchester, Tennessee, for the Appellant, Shari Parker Morrow.

Patricia A. Odell, Memphis, Tennessee, for the Appellee, Estate of Fay A. Jones.

## OPINION

Plaintiffs/buyers Shari Parker Morrow (Ms. Morrow) and Louie Morrow (Mr. Morrow, collectively, "the Morrows") commenced this cause of action on September 24, 1998, alleging breach of contract for the sale of real estate. They prayed for specific performance of the contract and for an order enjoining proceedings under a forcible entry and detainer action which had been brought against them by Defendant/seller Fay A. Jones (Ms. Jones). In their complaint, the Morrows allege that in July 1998, they and Defendant/seller Fay A. Jones (Ms. Jones) executed a contract for the sale of real estate in Shelby County. They further allege the agreed upon sales price was $110,000, that they paid $500 earnest money, and that the contract required Ms. Jones to make several repairs; to carry a second mortgage of $11,000 amortized for 360 months at 8% with a balloon note in 36 months; to pay up to 5% of the sales price toward the Morrows' closing costs; and to give the Morrows a $2,000 decorating allowance.

The Morrows' complaint further alleges that following an inspection of the property, the parties agreed that the Morrows would make and pay for all repairs required by the appraisal of the property, and that Ms. Jones would reimburse them for these costs at closing. They further submit that in reliance on this agreement, they incurred the expense of the required repairs. The Morrows additionally contend that on or about August 6, 1998, Ms. Jones delivered the property to them; that a closing date was set for September 4, 1998; and that on or about September 1, 1998, their lender transmitted an authorization to close to the closing agent, authorizing Morrows' loan of $89,600. The Morrows assert they appeared for the closing date on September 4, 1998, with the $10,500 cashier's check needed to close the loan. They allege Ms. Jones breached the contract by refusing to complete the closing or to reimburse the Morrows for the repairs they made to the property.

Ms. Jones filed her amended answer, counter-complaint, and third-party complaint on June 24, 1999. In her amended answer, Ms. Jones contends the contract called for a sale price of $112,000. She further submits that the original closing date was July 31, but that the closing was not held because the Morrows were unable to obtain the necessary financing. Further, she contends the Morrows were unable to close on subsequent closing dates scheduled for August 3 and August 24, 1998. She asserts that she had agreed to carry a second mortgage of $5,600, that the Morrows were required to bring $22,893 to the closing, and that the Morrows brought only $10,500 to the September closing.

In her amended answer, Ms. Jones also contends the Morrows and their real estate agent fraudulently told her that they had obtained financing, and that in reliance on their statements she agreed to allow the Morrows to store boxes in the detached pool house until closing. Ms. Jones asserts she did not consent to the Morrows moving into the main house. She alleges that cross-defendant Hurley Lawrence, the Morrows' real estate agent, permitted the Morrows to move into the main house without her consent. She further asserts the Morrows made unauthorized alterations to the property. Ms. Jones counter-complained against the Morrows and crossed-claimed against the mortgage broker and the real estate company that had represented the Morrows.

In October 1998, the trial court issued a temporary restraining order enjoining the forcible entry and detainer action until a trial could be heard in the cause. The trial court further ordered the Morrows to pay rent to Ms. Jones of $850 per month until resolution of the matter. The order provided rental payments would be applied to the money due, if any, by the Morrows to Ms. Jones.

After a three year dispute, including much ado over payment of rent by the Morrows, payment of the mortgage on the property by Ms. Jones, and several contempt hearings, a trial was conducted on April 17, 2001. The trial court found the Morrows were entitled to $8,595 in credits for repairs to the property, but that minus the cash brought to the closing and the credits they were still $798 short at closing. The trial court further found that Ms. Jones had suffered an economic hardship because the Morrows failed to bring sufficient funds to the closing, because they remained in the house while pursuing specific performance, and because of their late and missed rental payments. The trial court also found that the Morrows came to the closing unprepared to close, and that no agreement was made to continue the closing to another day. Additionally, the trial court found that Ms. Jones had given the Morrows access to the pool house before closing, that the Morrows had moved into the main house, and that the Morrows had refused to vacate the property upon the request of Ms. Jones.

The trial court determined the Morrows were not entitled to specific performance. It awarded Ms. Jones a judgment for damages in the amount of $22,619.87. After applying credits due to the Morrows, the trial court found the Morrows owed Ms. Jones $14,024,87. The trial court also awarded Ms. Jones attorney's fees in the amount of $10,000 and ordered additional attorney's fees of $7,192.24 to be paid from the $11,669.01 on deposit with the court. The court dismissed Ms. Jones' cross-complaints, awarding compensatory damages to cross-defendant Lawrence. Ms. Morrow filed a timely notice of appeal on May 3, 2002.

### *Issues Presented*

Ms. Morrow presents the following issues, as we slightly re-state them, for review by this Court:

> (1)      Whether the trial court erred by failing to grant Ms. Morrow specific performance of the real estate sales contract.

(2)     Whether the trial court erred by failing to find Ms. Morrow had substantially performed under the terms of the contract.

(3)     Whether the trial court erred by awarding consequential damages to Ms. Jones.

(4)     Whether the trial court erred by failing to award Ms. Morrow equitable relief under theories of unjust enrichment and equitable estoppel.

(5)     Whether the trial court erred by failing to afford Ms. Morrow a full and fair hearing and conducting a proceeding so flawed it constituted an abuse of discretion.

### Standard of Review

Our standard of review of the issues of fact of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### Analysis

We begin our analysis by noting that a decision to award equitable relief lies within the discretion of the trial court, and will not be overturned on appeal absent an abuse of that discretion. *Early v. Street*, 241 S.W.2d 531, 536 (Tenn. 1951). Although specific performance is often regarded as an appropriate remedy for the breach of a contract for the conveyance of real property, the appropriateness of the remedy is dependent on the particular facts of each case. *McGaugh v. Galbreath*, 996 S.W.2d 186, 191 (Tenn. Ct. App. 1998).

> [T]o support such relief the contract must be clear, complete and definite in all its essential terms. The Court will not make a contract for the parties and the agreement sought to be enforced specifically must show beyond doubt that the minds of the parties actually met and that they themselves made the agreement.

*Id.* (quoting *Parsons v. Hall*, 199 S.W.2d 99, 100 (Tenn. 1947) (citing Gibson's Suits in Ch., 1937 Ed., § 949)).

In this case, it is not disputed that the closing date for sale of this property was postponed more than once because the Morrows were unable to obtain financing. Additionally, Ms. Morrow does not argue that she came to the September 1998 closing prepared to tender the *full* purchase price

for the property. Although Ms. Morrow argues in her brief that she "fulfilled the terms of the contract," she also submits, "the remainder [of the purchase price] would [have been] available with only a small amount of additional time that would not have caused injury to the defendant." The evidence does not preponderate against the trial court's finding that, even after application of credits due Ms. Morrow, she was nearly $800 short of the purchase price. Thus, even after considering Ms. Morrow's argument that she had "substantially performed" the contract, and assuming, *arguendo*, that substantial performance would entitle the buyer to specific performance of a contract for the sale of real property, we cannot say the trial court abused its discretion by refusing to award Ms. Morrow the equitable remedy of specific performance.[2]

We next turn to Ms. Morrow's argument that the trial court erred in its award of damages to Ms. Jones, and that this error resulted in unjust enrichment. The trial court found "[a]n economic hardship was caused toward Ms. Jones because the Morrows failed to produce sufficient funds for the closing, and the Morrows remained in the house while pursuing specific performance." The trial court further found that Ms. Jones' first mortgage, including late fees, attorney's fees, and reinstatement fees, was $20,561.11 in arrears, and that her second mortgage, including fees, was $2,058.76 in arrears. The court found the Morrows should pay Ms. Jones these amounts.

Ms. Morrow submits that the trial court's award was an improper award of consequential damages. She cites *Turner v. Benson*, 672 S.W.2d 752 (Tenn. 1984), for the proposition that special damages are recoverable in a breach of contract action only where they were in the reasonable contemplation of the parties when the contract was executed. She argues, in essence, that Ms. Jones was liable for the mortgage payments regardless of the breach by the Morrows, and that the Morrows breach did not cause the damages. She further argues that, although the Morrows were at times late in making the court-ordered rental payments, and although the Morrows did not pay seven of a total of 30 monthly rental payments, they should not be responsible for Ms. Jones' failure to pay the mortgages as due.

Generally, the courts may award all damages which are the normal and foreseeable results of a breach of contract. *See, e.g., Wills Elec. Co. v. Mirsaidi*, No. M2000-02477-COA-CV-R3, 2001 WL 1589119, at *4 (Tenn. Ct. App. Dec. 13, 2001)(*no perm. app. filed*)(citing *Moore Construction Co. v. Clarksville Dept. of Electricity*, 707 S.W.2d 1 (Tenn.Ct.App.1985); *Bush v. Cathey*, 598 S.W.2d 777 (Tenn.Ct.App.1979); *Wilson v. Dealy*, 434 S.W.2d 835 (Tenn.1968)). Such damages include reasonably foreseeable incidental and consequential damages. *Id.*

This case presents a unique set of facts. In their complaint, the Morrows sought two equitable remedies. They sought specific performance of the contract to purchase real property and an injunction against a forcible entry and detainer action brought by Ms. Jones. The trial court granted the injunction, ordering the Morrows to pay rent of $850 a month to Ms. Jones pending

---

[2]In *Hill v. Goodwin*, 722 S.W.2d 668, 671-672 (Tenn. Ct. App. 1987), we noted, "we are not convinced that substantial performance of a contract for the sale of real estate will entitle the vendee to specific performance of that agreement" in Tennessee.

resolution of the action. In essence, the court created a second contractual relationship between the parties, that of landlord-tenant. However, the court also granted the Morrows' prayer for an injunction, thereby prohibiting Ms. Jones from exercising the right to remove a tenant who fails to pay their rent. Further, the Morrows failed to pay the rent in a timely fashion and, accordingly, were found by the trial court to be in contempt. At the time of trial, the Morrows had failed to pay at least 7 months rent.

Ultimately, after a prolonged dispute of three years, the trial court determined that the Morrows had moved into Ms. Jones home without her consent, that they had breached the contract to purchase, and that they were not entitled to specific performance. Thus, for three years, Ms. Jones was under court order to permit the Morrows to occupy her property; was, therefore, unable to seek another buyer; and remained liable for the mortgages on the property. In the meantime, the Morrows did not abide by the court's order with respect to rental payments, despite the fact that it was their prayer for an injunction enjoining Ms. Jones' forcible entry and detainer action which enabled them to remain on the property.

Although we cannot say the trial court's award of consequential damages to Ms. Jones is inequitable or results in unjust enrichment under these circumstances, we agree with Ms. Morrow that the measure of damages was in error. The underlying mortgage liability was not a consequential damage resulting from the Morrows' breach, but a pre-existing obligation of Ms. Jones. However, under the circumstances, Ms. Jones' inability to pay the mortgage in a timely fashion was a foreseeable consequence of the Morrows failure to pay rent. Thus, the trial court properly awarded the late fees, reinstatement fees, and attorney's fees as consequential damages, but erred in awarding the amount of the underlying mortgage. Accordingly, we remand for a re-calculation of the consequential damage award to Ms. Jones.

Ms. Morrow contends Ms. Jones should be equitably estopped from seeking damages for breach of contract. We find no merit in Ms. Morrow's assertion that equitable estoppel should afford her a basis for relief. The evidence does not preponderate against the trial court's finding that the Morrows were approximately $800 short of the purchase price at the time of closing, and, without elaborating on the statute of frauds applicable to the sale of real property, there is nothing in the record to indicate that Ms. Jones agreed to convey the property for less than the contractual purchase price.

Likewise, we find no merit in Ms. Morrow's assertion that the trial court abused its discretion in how it conducted the proceedings to such an extent that Ms. Morrow's due process rights were violated. Generally, the conduct of a trial or proceeding is within the sound discretion of the trial court. *Beatty v. McGraw*, No. 03A01-9211-CV-00417, 1993 WL 119799, at *4 (Tenn. Ct. App. Apr. 16, 1993)(*no perm. app. filed*). In light of the entire record in this case, we cannot say the trial court abused its discretion in determining the course of the proceedings.

### *Holding*

We affirm the judgment of the trial court denying Ms. Morrow specific performance. We affirm the award of consequential damages as modified. This cause is remanded for a determination of consequential damages consistent with this opinion. Costs of this appeal are taxed one-half to the Estate of Fay A. Jones, and one-half to the Appellant, Shari Parker Morrow, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE