IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 19, 2015

**WENDY A. MCCULLEY v. ROBERT MCCULLEY**

**Appeal from the Circuit Court for Shelby County**
**No. 153644R      Robert L. Childers, Judge**

_____

**No. W2014-02178-COA-R3-CV – Filed October 2, 2015**

_____

This is a breach of contract case. In 2012, the parties entered into a contract to resolve an issue of past-due child support owed by Appellant to Appellee. The contract provided that Appellant would grant a remainder interest in his home to Appellee, reserving a life estate interest for himself. In exchange, Appellee agreed to forgive the past-due child support owed to her by Appellant. The contract provided, among other things, that Appellant would pay the taxes on the property during his lifetime and would make monthly payments to Appellee's attorney to repay Appellee's attorney's fees. In 2014, Appellee filed a petition alleging that Appellant breached the contract by, among other things, failing to pay the taxes on the property. After a hearing, the trial court found that Appellant breached the contract and that forfeiture of his life estate in his home was the appropriate remedy. On appeal, Appellant admits that he breached the contract but argues that the trial court erred in holding that forfeiture was an appropriate remedy. Because the trial court failed to provide any reasoning for its decision, we are unable to perform a meaningful review of this issue on appeal. We affirm in part but vacate the trial court's revocation of Appellant's life estate and remand for further findings and conclusions on that issue.

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Robert McCulley, Memphis, Tennessee, appellant, Pro Se.

Lara E. Butler, Memphis, Tennessee, for the appellee, Wendy A. McCulley.

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

Appellee Wendy Alison Whitmire McCulley ("Ms. McCulley") and Appellant Robert Joseph McCulley ("Mr. McCulley") were divorced pursuant to a final decree of divorce entered by the Shelby County Circuit Court on January 22, 1997. At the time of the divorce, the parties had three minor children, born in 1990, 1991, and 1993. The divorce decree incorporated the terms of a marital dissolution agreement between the parties. The agreement granted Ms. McCulley custody of the children and required that Mr. McCulley pay $1,200 per month in child support and maintain a $150,000 life insurance policy for the children's benefit.[1] The agreement also provided that if either party breached its provisions, the breaching party would be responsible for paying the reasonable attorney's fees and expenses incurred by the other party as a result of the breach.

In the years that followed, Mr. McCulley struggled to satisfy his obligations under the marital dissolution agreement. In September 2000, Ms. McCulley filed a petition to hold Mr. McCulley in contempt for, among other things, failing to maintain a life insurance policy. In an interim order related to the petition, the trial court ordered Mr. McCulley to pay Ms. McCulley $5,000 for attorney's fees and expenses. In a subsequent order, the court ordered Mr. McCulley to pay Ms. McCulley an additional $10,000 for attorney's fees and expenses. The court ordered Mr. McCulley to make monthly payments of $150 to Ms. McCulley in addition to his $1,200 per month child support obligation to satisfy those judgments.

By 2003, Mr. McCulley had fallen behind on his monthly payments of both child support and attorney's fees to Ms. McCulley. In September 2003, Ms. McCulley filed a petition to hold Mr. McCulley in civil contempt. Mr. McCulley admitted he was behind on the payments and filed a counter-petition for a reduction in child support. In June 2004, the trial court entered a consent order reflecting the parties' agreement that Mr. McCulley owed Ms. McCulley $24,228 in arrearages for child support, medical expenses, and prior attorney's fees judgments but that Mr. McCulley's child support obligation should be reduced in light of his decreased earning capacity. The consent order provided that, going forward, Mr. McCulley would make monthly payments to Ms. McCulley of $800—$658 per month towards his ongoing child support obligation and $142 per month going towards his arrearage.

---

[1] The final decree of divorce in this case was entered in 1997. Separate Permanent Parenting Plans were not required to be entered by the court in divorces involving minor children until July 1, 2001.

In August 2011, Ms. McCulley filed another petition to hold Mr. McCulley in civil contempt for failing to make his monthly payments. Ms. McCulley alleged in the petition that Mr. McCulley still owed her $16,476 on the judgment from the court's June 2004 consent order, as well as an additional $41,203 in past-due child support that had accrued since that time. Once again, the parties were able to settle the claims without a trial. They agreed that to satisfy his debt, Mr. McCulley would convey to Ms. McCulley a remainder interest in his home at 1743 Brentford Cove in Cordova, Tennessee, while reserving a life estate in the property. The parties, both of whom were represented by counsel at the time, executed a written agreement memorializing the terms of the settlement. The settlement agreement, which refers to Mr. McCulley as "Respondent" and Ms. McCulley as "Petitioner," provides in pertinent part as follows:

### Terms of Settlement

To reach a full and final settlement of all matters and causes of action arising out of the controversy set forth above, the Petitioner and Respondent agree as follows:

1. The Respondent and Petitioner agree that the total child support arrearage in this matter, including any interest to date, is in the amount of $45,000.00. . . .

2. Respondent agrees to pay $4,000.00 for Petitioner's attorney fees related to the filing of the Petition in this matter. Payment shall be made to Petitioner's attorney at 88 Union Ave, 13th Floor, Memphis, TN 38103.

. . . .

4. The Respondent will commence payment on the attorney fees, referred to in paragraph 2 above, in increments of no less than $200.00 per month until the attorney fees are paid in full. The first payment shall be due on Wednesday, March 15, 2012 and each and every payment thereafter shall be due and payable on or before the 15th of each month, until the attorneys [sic] fees are paid in full.

. . . .

6. The parties agree that the Respondent, within five (5) days of the execution of this agreement by both parties, shall convey by deed to Petitioner a remainder interest in the property known municipally as 1743 Brentford Cove,

Cordova, Tennessee 38016. The Respondent shall reserve a life estate in the property.

7. The Petitioner accepts said conveyance referred to in paragraph 6 as full payment, receipt and satisfaction of any and all child support arrearages and specifically acknowledges that the present and future value received in said conveyance is equal to or greater than any child support arrearage that was owed to Petitioner by the Respondent.

. . . .

10. The parties agree that during the lifetime of the Respondent that the Respondent shall be responsible for and timely pay any and all property taxes, transfer taxes, or other taxes related to said property referred to in paragraph 6 and 7.

. . . .

14. The laws of the State of Tennessee shall govern this agreement in all respects.

. . . .

17. Each party acknowledges that this Agreement has been entered into of his or her own volition with full knowledge and information including tax consequences. Each believes the terms and conditions to be fair and reasonable under the circumstances. No coercion or undue influence has been used by or against either party in making this Agreement. Further the attorneys representing each party, shall be held harmless for any tax consequences as a result of this Agreement as no tax advice was sought or given. Each party acknowledges that no representatives of any kind have been made to him or her as an inducement to enter into this Agreement, other than the representations set forth herein.

. . . .

21. Should either party incur any expense or legal fees as a result of the breach of any portion of this agreement by the other party, the Court shall award reasonable attorney's fees and suit expenses to the non-defaulting party.

The trial court entered a consent order incorporating the parties' settlement agreement in February 2012.

On July 16, 2014, Ms. McCulley initiated the present litigation by filing a petition for breach of contract in which she sought to revoke Mr. McCulley's life estate in the property. Ms. McCulley alleged that Mr. McCulley breached the parties' 2012 settlement agreement by failing to pay the taxes on the property. She alleged that, as a result of the breach, Mr. McCulley put her at risk of having a lawsuit filed against her for the delinquent taxes. Ms. McCulley requested that the court revoke Mr. McCulley's life estate and grant her sole ownership of the property.

The parties initially appeared before the trial court for a hearing on Ms. McCulley's petition on August 15, 2014. Mr. McCulley was not represented by an attorney at that hearing, and the court granted a continuance so that he could obtain counsel.[2] Though there is no transcript of the August 15 hearing, Mr. McCulley states in his brief that, during the hearing, the trial judge advised him that he could be appointed an attorney if he could qualify as indigent. Nevertheless, when the parties appeared before the court again on September 26, 2014, the trial court declined to appoint Mr. McCulley an attorney or to grant him another continuance and proceeded with the hearing on Ms. McCulley's petition. Though there is no transcript of the September 26 hearing, Mr. McCulley states in his brief that, in reliance on the trial judge's statement regarding the appointment of counsel at the August 15 hearing, he advised the court that he could not afford an attorney and requested that the court appoint one to represent him. Mr. McCulley states that the trial court denied his request and informed him for the first time that he could not be appointed an attorney in this type of case. Mr. McCulley states that he then asked the trial court to grant him a second continuance so that he could attempt to hire an attorney, but the trial court declined to do so and proceeded with the hearing.

On October 7, 2014, the trial court entered a final order granting Ms. McCulley's petition. Initially, the court found that the settlement agreement entered into between Mr. McCulley and Ms. McCulley was a valid and binding contract. The court set out the terms of Paragraph 2 (requiring Mr. McCulley to pay $4,000 for Ms. McCulley's attorney's fees), Paragraph 4 (requiring Mr. McCulley to pay those fees in increments of no less than $200 per month), Paragraph 10 (requiring Mr. McCulley to pay property taxes on the subject property), Paragraph 17 (providing that the parties voluntarily entered the agreement with full knowledge of its consequences), and Paragraph 21 (providing that the court should award

---

[2] Though the record does not contain a transcript or statement of the evidence from the August 15 hearing, both parties acknowledge in their appellate briefs that the court granted a continuance at the initial hearing so that Mr. McCulley could obtain counsel.

reasonable attorney's fees and expenses to a non-defaulting party incurring legal fees). The court then made the following findings:

> 7. The court finds as a matter of law that the Respondent, Robert McCulley has breached the terms of Paragraphs 2, 4 and 10 of the Settlement Agreement, and therefore, his life estate interest in the subject property located at 1743 Brentford Cove, Cordova, TN 38016 should be revoked.
>
> 8. The court finds that [Ms. McCulley] has incurred $1,800.00 in attorney fees for bringing the current petition, and that this attorney fee is fair and reasonable under the circumstances.

In light of its findings, the court ordered that Mr. McCulley be divested of any and all interest in the property and that it be vested solely in Ms. McCulley in fee simple. Additionally, the court ordered Mr. McCulley to pay $1,800 for Ms. McCulley's attorney's fees.

Mr. McCulley timely filed a notice of appeal to this Court on October 30, 2014. Proceeding pro se on appeal, Mr. McCulley argues that the trial court erred in denying his request for a second continuance to obtain counsel. Mr. McCulley also argues that the trial court erred in concluding that forfeiture of his life estate was the appropriate remedy for his breach of the settlement agreement.

## II. Discussion

We recognize that Mr. McCulley is a pro se litigant and has represented himself without the assistance of counsel both in the trial court and on appeal. While it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere," *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013), Mr. McCulley, as a pro se litigant, is entitled to fair and equal treatment by the courts. *Barnett v. Tenn. Orthopaedic Alliance*, 391 S.W.3d 74, 78 (Tenn. Ct. App. 2012). Courts must take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003). Accordingly, courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their filings. *Id.* at 63. Nevertheless, courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, while courts cannot create claims or defenses for pro se litigants where none exist, we are compelled to give effect to the substance, rather than the form or terminology, of a pro se litigant's filings. *Id.*

In a non-jury case such as this one, the appellate court will review the record de novo with a presumption that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). That presumption of correctness does not extend, however, to the trial court's conclusions on matters of law. *Armbrister*, 414 S.W.3d at 692. The interpretation of a written agreement, like the settlement agreement at issue in this case, is a matter of law. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). Finally, a trial court has broad discretion over the course and conduct of its proceedings. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). As such, a trial court's ruling on discretionary matters will not be disturbed on appeal unless the record shows that the trial court's decision constitutes an abuse of discretion. *Id*. A trial court abuses its discretion only when it applies an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice to the complaining party. *Armbrister*, 414 S.W.3d at 693. We conduct our analysis with the foregoing principles in mind.

### *The Denial of Mr. McCulley's Request for Continuance*

Mr. McCulley asserts that the trial court erred in denying his request for a continuance to obtain counsel during the trial court's September 26, 2014 hearing. In his brief, Mr. McCulley states that at the initial hearing on August 15, 2014, the trial court granted him a continuance and expressed that he would be entitled to an appointed attorney if he qualified as indigent. Mr. McCulley states that, in reliance on the court's statement, he intended to demonstrate that he was financially unable to procure counsel during the September 26, 2014 hearing. Mr. McCulley states that when the trial court denied his attempt to prove he was indigent during the September 26, 2014 hearing, he requested a second continuance that the trial court denied. Mr. McCulley states that the trial court's denial of his request for a second continuance left him "totally unprepared" to represent himself in the hearing. Mr. McCulley contends that he was prejudiced by the court's decision because he was forced to proceed without the assistance of counsel and, due to his ignorance of courtroom procedure, was unable to present certain documents of "great importance" in his defense. As such, Mr. McCulley contends that the trial court abused its discretion in denying his request for a second continuance.[3]

---

[3] Specifically, Mr. McCulley states in his brief: "I believe that there was just cause and sufficient reason for granting a continuance and the fact that I was ruled against and forced totally unprepared or knowledgeable to face a seasoned and well respected attorney in this state with vast knowledge and ability to maneuver in a court room, of which I had neither." Mindful of our duty to give effect to the substance, rather than the form or terminology, of a pro se litigant's filings, we interpret the foregoing statement as a contention that the trial court abused its discretion in denying Mr. McCulley's request for a second continuance.

A trial court's decision on a motion for a continuance is fact-specific and must be viewed in light of the circumstances existing when the motion is filed. *Nagarajan*, 151 S.W.3d at 172. The party seeking a continuance carries the burden to prove that the circumstances justify it. *Howell v. Ryerkerk*, 372 S.W.3d 576, 580 (Tenn. Ct. App. 2012). To meet this burden, the party must provide some "strong excuse" for postponing the proceedings. *Id.* (quoting *Barber & McCurry, Inc. v. Top-Flite Dev. Corp. Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986)). "Factors relevant to the trial court's decision include: '(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'" *Id.* at 580-81 (quoting *Nagarajan*, 151 S.W.3d at 172).

We cannot conclude that the trial court abused its discretion in denying Mr. McCulley's request for a continuance based on the record before us. His motion was made orally during the September 26, 2014 hearing. Though it is not clear whether a court reporter was present, there is no transcript of that hearing included in the record. Pursuant to Rule 24(b) of the Tennessee Rules of Appellate Procedure, it is incumbent on the appellant to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Furthermore, no statement of the evidence was filed pursuant to Rule 24(c) of the Rules of Appellate Procedure. Because the trial court's order does not discuss Mr. McCulley's motion for a continuance, much less provide a basis for its denial, the only information we have related to this issue is what we can glean from Mr. McCulley's appellate brief. Though we do not question the veracity of the representations in Mr. McCulley's brief, it is well-settled that "[a] recitation of facts and argument in an appellate brief does not constitute evidence and cannot be considered in lieu of a verbatim transcript or statement of the evidence and proceedings." *Moore v. All in One Automotive, Inc.*, 383 S.W.3d 526, 528-29 (Tenn. Ct. App. 2012) (quoting *In re M.R.*, No. M2007-02532-COA-R3-JV, 2008 WL 2331030, at *3 (Tenn. Ct. App. June 3, 2008)). "Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." *Id.* (quoting *In re M.R.*, 2008 WL 2331030, at *3). In such circumstances, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's decision. *See Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012). While we are not unmindful of Mr. McCulley's pro se status, excusing his noncompliance with applicable substantive and procedural law would constitute unfairness to Ms. McCulley. Consequently, under the circumstances, we hold that the trial court did not abuse its discretion in proceeding with the September 26, 2014 hearing despite the fact that Mr. McCulley requested a second continuance allegedly based on the prior statements of the trial court and was not represented by counsel.

*Revocation of Mr. McCulley's Life Estate*

Next, Mr. McCulley asserts that the trial court erred in concluding that revocation, or forfeiture, of his life estate was the appropriate remedy for his breach of the settlement agreement. In his brief, Mr. McCulley admits that he breached the settlement agreement by falling behind on tax payments but asserts that he had remedied the breach by paying the taxes. Moreover, he points out that the settlement agreement does not provide that the remedy for breach is revocation of his life estate. Accordingly, Mr. McCulley contends that the trial court erred in divesting him of any and all interest in the property and vesting the property solely in Ms. McCulley in fee simple.[4]

The decision to award an equitable remedy, such as forfeiture for a breach of contract, lies within the discretion of the trial court. *See Morrow v. Jones*, 165 S.W.3d 254, 258 (Tenn. Ct. App. 2004). Because the propriety of the trial court's remedy is dependent on the particular facts and circumstances of the case, this Court will not overturn the trial court's decision absent an abuse of that discretion. *Id*. While forfeiture of a party's interest under a contract will be enforced where equity demands it, the law does not favor forfeitures, and courts are always prompt to seize hold of any circumstances that indicate an intent to waive forfeiture. *Cole v. Atlanta Life Ins. Co.*, 134 S.W.2d 912, 914 (Tenn. Ct. App. 1939); *see also Am. Nat. Ins. Co. v. Davidson*, 57 S.W.2d 788, 790 (Tenn. 1933) ("Forfeitures are not favored, and will not be enforced against good conscience." (quoting *Indep. Order of Foresters v. Cunningham*, 156 S.W. 192, 194 (Tenn. 1913))). "Before a court will enforce a forfeiture, there must be clear proof of the right to the forfeiture and the grounds on which the forfeiture is allowed must be well established." *1963 Jackson, Inc. v. De Vos*, 436 S.W.3d 278, 291 (Tenn. Ct. App. 2013) (quoting *Hooton v. Nacarato GMC Truck, Inc.*, 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)). Particularly in a case such as this, where Mr. McCulley stands to lose his home, every reasonable presumption is against forfeiture and the person seeking to enforce the forfeiture. *See id*.

In this case, the trial court's basis for determining that Mr. McCulley should forfeit his life estate as a result of his breach of the settlement agreement is not clear. The settlement agreement itself does not provide any specific remedy for a breach by the parties and is therefore not susceptible to a construction that would make Mr. McCulley's interest in the property subject to automatic forfeiture for its breach. It appears that Ms. McCulley

---

[4] Specifically, Mr. McCulley states in his brief: "Never would I had signed an agreement that stated if for any reason the contract was not met, that the courts could award [Ms. McCulley] the deed to the house to dispose of as she saw fit." Again, mindful of our duty to give effect to the substance, rather than the form or terminology, of a pro se litigant's filings, we interpret the foregoing statement as a contention that the trial court erred in concluding that forfeiture of his life estate was the appropriate remedy for his breach of the settlement agreement.

concedes this point in her appellate brief as she argues that forfeiture of Mr. McCulley's life estate is appropriate, not under the terms of the settlement agreement, but as an equitable remedy under Tennessee law.

Ms. McCulley contends that forfeiture is an appropriate remedy for Mr. McCulley's failure to pay the taxes because if the property is sold to a third party at a tax sale to satisfy the deficiency, she could lose her remainder interest in the property. She argues that Mr. McCulley's failure to pay taxes on the property therefore entitles her to the remedy of revoking his life estate under the common law doctrine of waste. In support of her argument, Ms. McCulley cites the following language from a 1905 Tennessee Supreme Court case:

> [T]he life tenant is still charged with the duty of keeping down taxes, and upon his failure to do so the remaindermen may, by proper legal proceedings, force him to do so by paying the taxes themselves and seeking subrogation to the state, county, or city lien for reimbursement, or, if necessary, file a bill quia timet to impound the rents of land and compel their application to taxes during the currency of the life estate, or to sell the life tenant's interest for that purpose.

*Hadley v. Hadley*, 87 S.W. 250, 253 (Tenn. 1905). The foregoing language comes from a case in which the court was called upon to apply a then newly-enacted statute that provided tax assessments on real property would constitute a lien on the property itself and not merely on the interest of the person assessed.[5] *Id*. at 251. Recognizing that under the statute, a future interest in property could potentially be burdened by a life tenant's failure to pay taxes, the court outlined methods of recourse that the remainderman might use to protect his or her interest.

Although the quoted text from *Hadley* arguably contemplates that, in some circumstances, it may be necessary to extinguish a life estate interest prior to a tax sale for the protection of future interests, it is hardly necessary in every case, and we are not aware of any Tennessee case that has utilized that remedy. A number of other remedies are available to protect a remainderman's future interest in light of the life tenant's failure to pay taxes. For example, the remainderman may sue the life tenant for money damages to the extent he or she is injured by the non-payment of taxes; the remainderman may pay the taxes and sue the life tenant for reimbursement; the remainderman may have a receiver appointed to collect rents and profits from the life tenant and apply them to the payment of taxes; the

---

[5] A similar statute remains in effect today. Tennessee Code Annotated section 67-5-2102(b) (2013) provides: "Such taxes shall be a lien upon the fee in the property, and not merely upon the interest of the person to whom the property is or ought to be assessed, but to any and all other interests in the property, whether in reversion or remainder, or of lienors, or of any nature whatever."

remainderman may seek a mandatory injunction directing the life tenant to pay taxes; or the remainderman may enforce a lien against the life estate for the amount he has expended in the payment of taxes. *See* 4 John A. Borron, *Simes and Smith, The Law of Future Interests* § 1694 (3d ed.). Even if the property is subjected to a tax sale, the remainderman can extinguish the life tenant's interest and take possession of the property by purchasing the property at the tax sale. *See McGee v. Carter*, 212 S.W.2d 902, 906-07 (Tenn. Ct. App. 1948); *see also Duffley v. McCaskey*, 134 S.W.2d 62, 64-65 (Mo. 1939); *Jinkiaway v. Ford*, 145 P. 885, 889 (Kan. 1915). Moreover, even if the property is purchased by a third party at the tax sale, the remainderman's interest is protected by the right to redeem the property during the statutory redemption period. *See* Tenn. Code Ann. § 67-5-2701 ("Upon entry of an order confirming sale of a parcel, a right to redeem shall vest in *all* interested persons." (emphasis added)). As such, forfeiture of a life tenant's interest prior to a tax sale would only be an appropriate remedy in the most extreme circumstances, such as where the property is burdened with a tax lien that is constantly increasing and will render the remainderman's interest valueless.

Given the courts' strong disfavor for forfeiture and the myriad of alternative remedies available to protect future interests in property, it is imperative to our review that we know the nature and extent of Mr. McCulley's breach and its effect on Ms. McCulley's future interest. The trial court's order does not contain any findings on those matters. Despite the requirement of Rule 52.01 of the Tennessee Rules of Civil Procedure that trial courts expressly state their findings of fact and conclusions of law in all non-jury cases, this Court has, on occasion, chosen to "soldier on without guidance from the trial court where the basis for the trial court's decision can be readily gleaned from the record." *Potter's Shopping Ctr., Inc. v. Szekely*, 461 S.W.3d 68, 70 (Tenn. Ct. App. 2014) (citations omitted). However, we are unable to do so when, as is the case here, there is no transcript of the hearing or statement of evidence from which we can ascertain the basis for the trial court's decision. The record before us does not provide any insight regarding the extent of the tax deficiency on the property. As far as we can tell from the record, Mr. McCulley may have tainted his otherwise-unblemished record of paying taxes on time with a single late payment, and Ms. McCulley, despite the minimal threat to her remainder interest, seized upon that opportunity in an attempt to gain possession of the property. Conversely, it is also possible that Mr. McCulley has never paid taxes on the property, and Ms. McCulley's remainder interest is burdened with a constantly increasing tax lien that will render her use and enjoyment of the property valueless. We cannot proceed with a review of the trial court's judgment speculating on the factual findings it may or may not have made. *See Potter's*, 461 S.W.3d at 72.

Because we are unable to conduct meaningful appellate review of the trial court's decision, we vacate the portion of the trial court's order divesting Mr. McCulley of any and

all interest in the property and remand this case for additional proceedings consistent with this opinion. On remand, we instruct the trial court to conduct an evidentiary hearing in this matter, allowing both parties to submit additional proof regarding the issues before the court and to make findings regarding the extent, if any, of Mr. McCulley's tax deficiency and its effect on Ms. McCulley's future interest. In light of its findings, the trial court should consider the full range of remedies available to protect Ms. McCulley's future interest. In closing, we note that the trial court also awarded Ms. McCulley $1,800 in attorney's fees pursuant to Paragraph 21 of the settlement agreement, which provides for such an award to any party incurring fees and expenses as a result of the other's breach. Because Mr. McCulley admits to breaching the settlement agreement and does not challenge the award on appeal, we hold that the award of attorney's fees remains a valid charge against Mr. McCulley and is not affected by this opinion.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court his hereby affirmed in part and vacated in part and remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed one-half to Appellant Robert Joseph McCulley and one-half to Appellee Wendy Alison Whitmire McCulley, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE